THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUAN MARINE, Appellant.

First Department, January 5, 1989

## APPEARANCES OF COUNSEL

*Ann M. Donnelly* of counsel *(Mark Dwyer* and *Mark Cammack* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Beverly Van Ness* of counsel *(Philip L. Weinstein,* attorney), for appellant.

## OPINION OF THE COURT

CARRO, J.

Defendant was indicted on a single charge of criminal possession of a weapon in the third degree, based upon the seizure of a loaded .38 caliber revolver from his person. At issue on appeal is the propriety of the police action which yielded the weapon.

Prior to trial, defendant moved to suppress the physical evidence recovered from him. At the suppression hearing, Police Officer Carl Zanchelli testified that at approximately 8:30 P.M. on March 1, 1986, he was sitting in uniform and unaccompanied in a marked patrol car on the northwest corner of Stanton and Ludlow Streets on the Lower East Side of Manhattan. Zanchelli described this area as a "drug prone location". When Zanchelli first noticed the defendant, he was "staggering" toward the patrol car as he proceeded west on Stanton Street. There were no other pedestrians on the street.

When defendant reached the corner of Ludlow Street he looked at the patrol car, grasped an object on the left side of his body in the vicinity of his jacket pocket, and "push[ed]" the object up. Defendant then crossed Ludlow Street and, when he was directly in front of the patrol car, reached inside of his jacket with his right hand to "fix" an object in his left waistband. Zanchelli further testified that he was unable to see what the object was but, on the basis of his training and his observation of police officers adjusting guns in their waistband, Zanchelli suspected that the object was a gun. He decided, therefore, to ask defendant "where he was going and what he was doing."

As defendant continued west on Stanton Street, Officer Zanchelli drove his car alongside him. He then "nosed" the front of the vehicle ahead of defendant and slightly over the sidewalk to "cut [him] off." Zanchelli exited the patrol car and approached defendant, who appeared to be intoxicated. The officer asked defendant what he was doing and defendant replied "I'm doing nothing at this time."

At this point, the officer looked at defendant's waistband and noticed "a suspicious bulge" underneath his jacket in the spot where he had seen defendant adjusting an object moments earlier. He reached out and touched the area, feeling "a hard object" which he concluded was a gun. When Zanchelli reached to remove the object, defendant stepped back and began to turn as if to flee. The officer then grabbed him, "threw him against the wall," and seized a loaded and operable .38 caliber revolver from defendant's waistband.

The hearing court credited Zanchelli's testimony and, concluding that his conduct in approaching defendant and touching the bulge was "justified" under the circumstances, denied defendant's motion to suppress. In reaching its decision, the court deemed noteworthy a number of factors, including the location of the incident—which the court characterized as "one of the most notorious crime areas in the United States" —the hour of the night, and the fact that the officer was acting alone when he stopped defendant.

The rule is well-established that before a police officer may stop and forcibly detain an individual, he must entertain a reasonable suspicion that the individual has committed, is committing, or is about to commit a crime. (CPL 140.50 [1]; *Terry v Ohio,* 392 US 1; *People v De Bour,* 40 NY2d 210, 223.) In such circumstances, the officer may also conduct a limited, protective pat down or frisk of the detainee, if he reasonably suspects that he is in danger of physical injury. (CPL 140.50 [3]; *People v De Bour, supra.)*

In the within matter, Officer Zanchelli's observations of defendant and the attendant circumstances did not warrant a reasonable suspicion by the officer that defendant was engaged in criminal activity. Defendant's conduct, prior to the forcible stop, which Zanchelli effected by "nos[ing]" the front of his patrol car over the sidewalk "to block [defendant] off", was innocuous. Defendant was simply walking along the sidewalk at 8:30 P.M., allegedly somewhat inebriated, but not causing any disturbance or making any threatening or furtive gestures, when Zanchelli observed defendant "fix an object" under his jacket. Although Zanchelli testified that he suspected that the object was a gun, this was mere speculation on his part, for all the officer could see was defendant reaching into his jacket with his right hand. Zanchelli could just as well have assumed that defendant was scratching his stomach or tucking in his shirt. *(People v Miller,* 121 AD2d 335, 336, 338.) Indeed, at that point, Zanchelli did not discern any

waistband bulge or observe the outline or any part of a gun *(see, People v Prochilo,* 41 NY2d 759), and he had received no report that a man with a gun was in the vicinity. *(See, People v Benjamin,* 51 NY2d 267.)* In the absence of such additional information to arouse a reasonable suspicion, the inference that defendant was carrying a weapon rather than a host of innocent objects was unwarranted.

Moreover, there is no suggestion in the record that Zanchelli was apprehensive for his own safety. To the contrary, the officer's actions, in approaching defendant without calling for assistance or drawing his gun, "belied [any] * * * suspicion of defendant being armed." *(People v Miller, supra,* at 337.)

Under the circumstances, Zanchelli was authorized, at best, to exercise his common-law right of inquiry. *(People v De Bour, supra,* at 213.) To justify the more significant intrusion that ensued, however, Zanchelli was bound to articulate facts sufficient to establish a reasonable suspicion that defendant was committing a crime. *(Terry v Ohio, supra,* at 21.) This he failed to do, for all of the described events leading up to the search of defendant's person were susceptible of innocent interpretation. In that regard, the Court of Appeals has "frequently rejected the notion that behavior which is susceptible of innocent as well as culpable interpretation, will constitute probable cause". *(People v De Bour, supra,* at 216.)

In any event, Zanchelli testified that he did not pursue defendant in order to investigate what he possessed, but rather, "to ask him where he was going and what he was doing." Only after the officer accomplished this objective did he notice a "suspicious bulge". Based on his hunch that the bulge was a gun, he reached out and touched it. A police response subjectively premised upon a "hunch" or "gut reaction", however, is an insufficient predicate upon which to found a search and seizure. *(People v Sobotker,* 43 NY2d 559, 564.)

Furthermore, in *People v Ventura* (139 AD2d 196) this court recently reaffirmed the well-settled rule that a pat down or frisk conducted in the course of an authorized investigatory stop may not be predicated merely on the observation of an undefinable bulge in a jacket. *(Accord, People v Williams,* 79 AD2d 147; *People v Blackman,* 61 AD2d 916; *People v Batino,* 48 AD2d 619.)* Rather, there must be "proof of a describable object or of describable conduct that provides a reasonable

basis for the police officer's belief that the defendant [has] a gun in his possession". *(People v Prochilo, supra,* at 761.) Here, there was no proof of a describable object that reasonably could have been suspected of being a gun. Zanchelli neither saw the outline of a gun, nor any part of what appeared to be a gun. Significantly, he was completely unable to describe the bulge.

Therefore, Zanchelli's conduct in placing his hand on the bulge must "be justified by some describable conduct of defendant which reasonably [led the officer] to conclude that the bulge was evidence of a gun." *(People v Ventura, supra,* at 208.) Aside from the fact that defendant appeared to be intoxicated, however, his behavior was, in all other respects, unremarkable. Indeed, his conduct belied any consciousness of guilt, for he was well aware of the officer's presence and yet made no effort to avoid walking directly in Zanchelli's path or to turn away as he made the innocuous "adjustments" Zanchelli described. *(Cf., People v De Bour, supra,* at 221.)

Finally, we emphasize that the reputation of a location, however notorious, does not provide a predicate for subversion of the Fourth Amendment. *(People v Cornelius,* 113 AD2d 666, 671.) Of course, in determining whether the police acted reasonably in a given case, a court may consider "the nature and location of the area where a suspect is detained". *(People v Bronston,* 68 NY2d 880, 881.) That factor, however, must "exist in combination with objective factors specific to the incident which together support a founded suspicion that some particular criminal activity may be afoot." *(People v Boulware,* 130 AD2d 370, 373.) Here, defendant's observed conduct and the attendant circumstances failed to support a founded suspicion that defendant was engaged in criminal activity. Therefore, in the context of this case, we find the location of the arrest to be without significance.

A consideration of the facts in their totality leads us to conclude that the police action taken was far too intrusive under the circumstances.

Accordingly, the judgment of the Supreme Court, New York County (Edwin Torres, J., at suppression hearing and jury trial), rendered September 17, 1986, convicting defendant of criminal possession of a weapon in the third degree (Penal Law § 265.02), and sentencing him to a definite prison term of 6 months and 4½ years' probation, should be reversed, on the law, the motion to suppress granted, the judgment vacated and the indictment dismissed.

MURPHY, P. J., KUPFERMAN, ASCH and SMITH, JJ., concur.

Judgment, Supreme Court, New York County, rendered on September 17, 1986, unanimously reversed, on the law, the motion to suppress granted, the judgment vacated and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50, as in the interest of justice is required.