■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BENNY BARRETO, Appellant.—Judgment, Supreme Court, New York County (Murray Mogel, J., at hearing; Alfred Kleinman, J., at plea and sentence), rendered December 9, 1988, convicting defendant, upon his plea of guilty, of criminal possession of a weapon in the third degree and sentencing him, as a prior felony offender, to an indeterminate term of imprisonment of 2½ to 5 years, unanimously reversed, on the law, the motion to suppress granted, the judgment vacated and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant

to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

The issue to be decided on this appeal is the propriety of the stop of defendant and the immediate "grab" of his waist area by the partner of an officer who observed a bulge in defendant's waistband. Defendant was indicted on one count of criminal possession of a weapon in the third degree after the police recovered a .22 calibre revolver from his waistband. Under the totality of the circumstances, we conclude that the stop and "grab" of defendant by the partner of the officer who observed the bulge was not based on his reasonable suspicion that defendant was engaged in criminal activity and that the Supreme Court therefore erred in denying defendant's motion to suppress.

The People called only one witness at the hearing, Police Officer James Duggan, who testified that at approximately 12:50 A.M. on May 28, 1988, he was on antirobbery patrol at 42nd Street and Eighth Avenue, Manhattan, with his partners, Officers Robert Iaboni and James Carson. As Duggan drove the patrol car up Eighth Avenue, he saw defendant run across the street holding his waist. After defendant entered a movie theatre, Duggan turned to his partners and said "[h]e might have a gun." Duggan parked the car in front of the theatre and waited for defendant to exit.

When defendant emerged from the theatre five minutes later, Duggan observed a bulge, three or four inches long, at defendant's waistband, underneath his tee shirt (which Duggan subsequently stated could have been a tight-fitting sweatshirt) and jeans. Duggan did not see the outline of a gun and stated that the bulge could have been created by a weapon or by a bag of dope. The officers got out of their vehicle, and while Duggan remained on the sidewalk, Carson approached defendant as he was about to cross the street at a traffic light and immediately grabbed his waist. Duggan approached from behind and heard defendant say "I have a gun." A .22 calibre revolver was recovered from defendant's waistband and he was placed under arrest. Thirty-two rounds of .22 calibre ammunition were later discovered in defendant's pocket at the precinct.

Defendant appeals from the denial of his motion to suppress the gun and his statement to the police. Since we agree with

defendant's assertion that the People failed to meet their burden of establishing that the stop and grab by Carson were based on his reasonable suspicion that defendant was engaged in criminal activity (see, *People v Benjamin,* 51 NY2d 267; *People v Lypka,* 36 NY2d 210), we reverse.

"[A] police officer may stop a person in a public place * * * when he reasonably suspects that such person is committing, has committed or is about to commit" a crime (CPL 140.50 [1]; *Terry v Ohio,* 392 US 1; *People v De Bour,* 40 NY2d 210). A limited, protective pat down or frisk for weapons may then be conducted if the officer reasonably suspects that he is in danger of physical injury (CPL 140.50 [3]).

Significantly absent from the hearing in this matter is testimony from the officer who actually conducted the stop and "frisk". We therefore have no basis for concluding that Carson's actions were triggered by his reasonable suspicion that criminal activity was afoot or by his fear for his safety. Although Duggan testified that he saw a bulge in defendant's waistband, he never stated that he communicated his observations to Carson. The CPL authorizes a stop of an individual by an officer when *that* officer reasonably suspects that a crime is being committed and a frisk when *that* officer reasonably suspects that he is in danger of physical injury. We reject the People's suggestion that we infer that Carson shared Duggan's observations. Duggan testified that he remained on the sidewalk after getting out of the patrol car while Carson walked out into the street. There is, therefore, nothing in the record to support the contention that Carson reasonably suspected that defendant was committing a crime.

Even if Carson, like Duggan, had testified that he saw a bulge in defendant's waistband, such observation alone would not have satisfied the People's burden of proving a reasonable suspicion that defendant was committing a crime. In the "bulge" cases relied on by the People in support of their contention that the stop and frisk were lawful, additional indicia of criminal activity existed to justify the police intrusions. In *People v Benjamin (supra),* the officer had received a radio run advising him that there were men with guns at a specified location. In *People v Prochilo* (41 NY2d 759), the officer observed the complete outline of a revolver at defendant's side. In the companion case to *Prochilo, People v Goings,* the officer saw the outline of a gun in defendant's pocket.

In the instant case, however, there was no radio run, no anonymous tip, nor can defendant's acts of placing his hands

on his sides and crossing the street be considered furtive gestures. There is nothing in the record to indicate that defendant was able to identify the officers, who were in plain clothes, as members of the police department or that defendant attempted to evade them. "Behavior which is susceptible of innocent as well as guilty interpretation cannot constitute probable cause and 'innocuous behavior alone will not generate a founded or reasonable suspicion that a crime is at hand' " *(People v Miller,* 121 AD2d 335, 338, *lv denied* 68 NY2d 815, quoting *People v De Bour, supra,* at 216).

The proof adduced at the hearing also fails to establish that Carson, or even Duggan, reasonably feared for their safety, a prerequisite to frisking a suspect (CPL 140.50 [3]; *see, People v Marine,* 142 AD2d 368; *People v Miller, supra).* Duggan testified that prior to seeing the bulge in defendant's waistband, he told his partners that defendant might have a gun. However, he did not call for assistance and allowed defendant to enter a movie theatre which was, presumably, occupied by other patrons. A "reasonable suspicion" may not be based upon a vague or unspecified hunch *(People v Sobotker,* 43 NY2d 559; *People v Taveras,* 155 AD2d 131; *People v Ventura,* 139 AD2d 196). Although Duggan testified that he saw the bulge after defendant left the theatre, he did not see an outline of a gun through defendant's tight-fitting shirt and even acknowledged that defendant could have been concealing narcotics instead of a weapon. After defendant left the theatre, Carson approached him without drawing his weapon, further demonstrating a lack of fear for his safety *(see, People v Marine, supra).*

Although experienced police officers know that handguns are frequently carried in the waistband, and although a police officer need not await the glint of steel before acting to preserve his safety *(People v Benjamin, supra,* at 271; *People v Taveras, supra),* "a pat down or frisk conducted in the course of an authorized investigatory stop may not be predicated merely on the observation of an undefinable bulge in a jacket" *(People v Marine, supra,* at 371; *People v Ventura, supra).* Nor, based upon this record, was Carson's conduct in grabbing the area of the bulge " 'justified by some describable conduct of defendant which reasonably [led the officer] to conclude that the bulge was evidence of a gun' " *(People v Marine, supra,* at 372, quoting *People v Ventura, supra,* at 208). Undeniably, the officers had a legitimate basis for exercising their common-law right to inquire *(People v De Bour, supra; People v Howard,* 147 AD2d 177, *appeal dismissed* 74 NY2d 943). However, Carson's conduct in immediately grabbing defendant's waist,

especially in light of the absence of testimony indicating the extent of his earlier observations, exceeded the permissible scope of police intrusion *(see, People v Howard, supra).*

We further find that defendant's statement, which was made only after and as a result of the illegal search and discovery of the gun, should have been suppressed as fruit of the poisonous tree *(Dunaway v New York,* 442 US 200; *Brown v Illinois,* 422 US 590; *Wong Sun v United States,* 371 US 471; *People v Taveras, supra).*

Accordingly, the judgment is reversed, the plea is vacated, defendant's motion to suppress is granted and the indictment is dismissed. Concur—Murphy, P. J., Ross, Rosenberger, Kassal and Wallach, JJ.