■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HARRY JIMINEZ, Appellant.—Judgment of the Supreme Court, New York County (Stephen Crane, J.), entered on March 21, 1991, convicting defendant, upon his plea of guilty, of criminal possession of a weapon in the third degree and sentencing him, as a second felony offender, to an indeterminate term of imprisonment of from two to four years, is unanimously

reversed, on the law, the motion to suppress granted and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of a copy of this Court's order upon the respondent, with leave during this 30 day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

On the afternoon of August 15, 1990, Police Officers Gregory Melita, Dennis Carmody and Felicia Sanmartino were assigned to patrol duty inside the Taino Towers apartment complex in upper Manhattan. The location was known as a heavy drug area and had been the scene of numerous drug arrests in the past. Evidence at the suppression hearing established that shortly before 1:00 P.M., the officers rode upstairs to the sixth floor in one of the elevators. When they reached that floor and the doors opened, two men, one of whom was defendant herein, were standing near each other some two feet away, facing the elevator as if they planned to get on it. Although the officers did not recognize defendant, the other man was a dealer who had previously been arrested for selling drugs in the neighborhood. According to Officer Melita, defendant raised his hands towards his waistband and walked in the direction of the stairwell, but, upon cross-examination, the officer conceded that he had omitted to tell the Grand Jury that defendant reached for his waistband any time before turning his back and walking away. Officer Melita called out to defendant, "hey you." When defendant did not stop, Officer Melita approached, touched his shoulder and spun him around. Noticing a gun in defendant's waistband, Officer Melita reached toward him and removed it. Defendant was thereupon arrested and taken to the precinct.

The Supreme Court should have granted the motion to suppress. Defendant was stopped as he sought to leave a public section of an apartment complex where he had been waiting for an elevator in the company of an individual known to be a drug dealer. However, there is no indication whatever that defendant and the other man were even acquainted, much less that they were engaged in any suspicious activity. Defendant, apparently based upon no more than his presence in a building characterized by a high degree of drug activity and his standing somewhere in the vicinity of a man who had previously been arrested for drug dealing, was asked to account for what he was doing and then physically detained against his will. In that regard, in *People v Hollman* (79 NY2d

181) the Court of Appeals recently upheld the continued vitality of *People v De Bour* (40 NY2d 210, 223), in which the common-law right to inquire was described as being "activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure".

In the instant situation, there is simply no suggestion of any criminal activity. While a court, in examining the appropriateness of police conduct, may consider "the nature and location of the area where a suspect is detained" *(People v Bronston,* 68 NY2d 880, 881; *see also, People v Marine,* 142 AD2d 368, 372), "the mere presence of a known drug dealer in a high drug-prone area [does] not amount to an 'indication of criminal activity' " *(People v Boulware,* 130 AD2d 370, 374). Indeed, there is nothing apparent herein that would support the stop and search of defendant since defendant had a constitutional right not to respond to a question from Officer Melita and to walk away *(People v Howard,* 50 NY2d 583, 586), and defendant's movements, as purportedly observed by Officer Melita (such as, defendant moving his arms or his elbow "juggling a little bit from the side"), were, if not entirely innocuous, ambiguous at most. In the absence of any reasonably founded suspicion that criminal activity was underway and that defendant was engaged in anything more nefarious than waiting for an elevator, the stop and search which occurred here was unjustified. Concur—Carro, J. P., Milonas, Ellerin and Asch, JJ.