■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BARRY LEVERIDGE, Appellant. [612 NYS2d 568] —Judgment of the Supreme Court, New York County (Edward McLaughlin, J., at suppression hearing; Harold Rothwax, J., at plea and sentence), rendered July 29, 1992, convicting defendant, upon his guilty plea, of criminal possession of a controlled substance in the fifth degree, and sentencing him, as a second felony offender, to an indeterminate term of imprisonment of from 2 to 4 years, unanimously reversed, on the law, the motion to suppress physical evidence granted and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30 day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

Evidence adduced at a *Mapp/Huntley* hearing established that, on June 18, 1991, at about 6:07 P.M., Police Officer Jose Marrero observed two persons, one male and one female, engaging in conduct indicative of drug sales while they stood in a doorway on Second Avenue between 124th and 125th Streets in Manhattan. Officer Marrero communicated this information by radio to Police Officer Albert Lester, a 10-year veteran of the New York City Housing Police who, with his partner, approached the suspects and identified himself as a police officer. While in the process of apprehending the female suspect, Lester was advised by Marrero that he should "check out" defendant, who was about a foot away from her, leaning up against the same doorway. Displaying only the police shield around his neck, Officer Lester confronted defendant and "asked him where is his crack; at which time, he removed

his right hand from his pants pocket and removed a plastic bag containing 28 vials of crack, white top". Officer Lester then placed defendant under arrest.

When asked what he understood Officer Marrero's advice to "check out" defendant to mean, Officer Lester stated that it either meant Marrero had seen something before Lester's arrival or that something was "going on" between defendant and the two suspects to be apprehended. Officer Lester personally observed no suspicious activity.

Officer Marrero had been a member of the Housing Police force for about a year and had not previously taken part in a narcotics assignment. He observed the doorway with binoculars from his assigned post on the fourth floor of a nearby building and watched the two suspects make several apparent sales before he noticed defendant. The officer saw defendant engage in a brief conversation with another person, reach into his right front pants pocket and apparently pass something with closed hands to that other individual, who then walked away. In half an hour or more, Officer Marrero had observed no communication between defendant and the two suspects. He watched as Officer Lester approached and said something to defendant. He then saw defendant retrieve a plastic sandwich bag from his pants pocket and give it to Officer Lester, who only then placed defendant under arrest. Officer Marrero searched defendant after the arrest and found another vial of crack in a pack of cigarettes in his shirt pocket.

At some time between 6:30 and 7:00 P.M., Officer Marrero gave defendant his *Miranda* warnings, at which time defendant stated that he was not willing to answer questions. Later, at the stationhouse, while Officer Marrero was asking defendant pedigree questions, defendant "blurted out that the crack was for his personal use."

The hearing court found both officers' testimony to be credible, taking into account Officer Marrero's inexperience in narcotics investigation. The court further found that there was no probable cause to arrest defendant and that Officer Lester's approach and questioning of defendant did not constitute a detention and seizure. However, with respect to the propriety of asking defendant where his crack was, the court found that the communication to "check out" defendant "is an articulable reason not rising to criminal conduct which would permit the officer to ask the question." The court therefore held that the contraband was voluntarily turned over to the police. The court also denied defendant's motion to suppress

his subsequent statement that the cocaine was for his personal use.

On appeal, defendant does not contest the voluntariness of his statement. He argues that the approach by the police officers constituted a seizure and that the drugs were illegally obtained because the police lacked probable cause to believe defendant was engaging in criminal conduct. He contends that the single question addressed to him by Officer Lester exceeded the scope of a request for information *(People v De Bour,* 40 NY2d 210, 223). The People, in response, argue that the hearing court should have determined that the police had a founded suspicion criminal activity was afoot *(supra).*

As the Court of Appeals recently stated, "There are no bright lines separating various types of police activity" *(People v Bora,* 83 NY2d 531, 535). The radio transmission from Officer Marrero to "check out" defendant was vague, and Officer Lester concededly observed no suspicious behavior which would justify an intrusion beyond a mere request for information. The tone of his question was clearly accusatory, as the People concede, and operated to "transform the encounter from a merely unsettling one to an intimidating one" *(People v Hollman,* 79 NY2d 181, 192). As we read *People v Moore* (47 NY2d 911, *revg for reasons stated in dissenting opn* 62 AD2d 155, 157), the passing of an unknown object by defendant, within the same doorway used by two other persons to engage in drug sales, permits no more than a request for information *(see, People v Hollman, supra,* at 190-191), even assuming that knowledge of defendant's conduct is imputed to the apprehending officer *(see, People v Rosario,* 78 NY2d 583, 588, *cert denied* 502 US 1109 [1992]). Clearly, mere proximity to drug sellers does not implicate defendant in criminal activity *(People v Jiminez,* 187 AD2d 332, *lv denied* 81 NY2d 841; *People v Wilson,* 175 AD2d 15, *lv denied* 78 NY2d 1015).

The police approach and the single question addressed to defendant by Officer Lester do not constitute detention *(People v Bora, supra).* However, the legality of the subsequent seizure of the contraband depends on the justification for this level of intrusion into defendant's constitutional rights to privacy and freedom from interference *(People v De Bour, supra,* at 218). Supreme Court determined only that the police had a credible reason, not necessarily indicating criminal behavior, for requesting information from defendant. Having failed to conclude the officers possessed a founded suspicion that defendant was engaged in criminal activity, the hearing court's findings

do not satisfy the requirements necessary to justify a common-law right of inquiry *(People v De Bour, supra,* at 223), and defendant's motion to suppress physical evidence should have been granted. Concur—Rosenberger, J. P., Ross, Rubin, Nardelli and Tom, JJ. [As amended by unpublished order entered Aug. 4, 1994.]