Judgment, Supreme Court, Bronx County (Harold Adler, J., at suppression hearing; Seth Marvin, J., at nonjury trial and sentencing), rendered January 21, 2010, convicting defendant of attempted criminal possession of a weapon in the fourth degree, and attempted possession of ammunition, and sentencing him to an unconditional discharge, reversed, on the law, defendant’s suppression motion granted, and the accusatory instrument dismissed.
In a New York City Housing Authority (NYCHA) building, which the testifying officer characterized as a “drug-prone” location, the officer observed defendant descending the stairs to the lobby. Upon seeing the police, defendant “froze,” “jerked back,” and appeared “as if he was going to go back up the stairs,” although he never retreated up the stairs.* The officer *450 asked defendant to come downstairs, and defendant complied. The officer inquired whether defendant lived in the building, and defendant replied in the affirmative, whereupon the officer asked defendant to produce identification. Defendant immediately clarified that he was visiting his girlfriend, who lived in the building, and informed the officer that his identification was located in his pocket. As defendant moved his hands to retrieve it, the officer’s partner grabbed defendant’s left arm and pulled his hand behind his back, revealing a handgun inside defendant’s coat pocket. The officer seized the gun and placed defendant under arrest.
When the prosecutor asked the officer why he had engaged defendant in conversation, the officer replied, “It is a NYCHA building and we’re allowed to ask anybody inside the building — ” As the court sustained an objection, the officer interjected, “It is a prone drug [sic] location.”
A request for information is authorized where there is an “objective, credible reason, not necessarily indicative of criminality,” to initiate the level one encounter (see People v Moore, 6 NY3d 496, 498 [2006]). The circumstances herein did not provide an objective credible reason for a level one request for information.
Presence in a high-crime or drug-prone location, without more, does not furnish an objective credible reason for the police to approach an individual and request information (see People v McIntosh, 96 NY2d 521, 526-527 [2001]). As we have observed, “the reputation of a location, however notorious, does not provide a predicate for subversion of the Fourth Amendment” (People v Marine, 142 AD2d 368, 372 [1st Dept 1989]).
Nor does an individual’s desire to avoid contact with police— even in a high-crime neighborhood — constitute an objective credible reason for making a level one inquiry (Matter of Michael E, 84 AD3d 468 [1st Dept 2011]). In Michael E, two uniformed officers patrolling in a “high-crime area,” stopped their car and approached a group of young men, including the defendant, congregating on a street corner. When the officers exited the marked car and approached, the defendant “turned around, walked quickly away and looked back several times over the course of two minutes” (id. at 468). We held: “This did not justify the subsequent level one encounter, in which the testifying officer followed appellant in his police car, stopped the car, asked appellant to stop and asked him what he was doing. *451 Appellant’s conduct was ambiguous, and, in the circumstances presented, was no more than an exercise of his ‘right to be let alone’ in response to the initial approach of the other officers, rather than flight” (id.).
The People cite People v Holmes (81 NY2d 1056, 1058 [1993]) for the proposition that “[f]light ... in conjunction with equivocal circumstances . . . might justify a police request for information.” However, even if defendant’s conduct on the staircase can be equated with flight — which is extremely doubtful, given the testimony that he simply stopped descending the stairs upon viewing the officers — there were no equivocal circumstances (compare Holmes, 81 NY2d at 1057 [defendant with unidentified bulge in right jacket pocket walks away upon seeing police]). The right of police to patrol inside NYCHA buildings does not eliminate the requirement that each level of intrusion be supported by the corresponding level of suspicion.
Although subsequent events led to an otherwise lawful stop and frisk, those events were the result of the unauthorized encounter. Accordingly, defendant is entitled to suppression because the police action was impermissible at its inception. Concur — Moskowitz, Freedman and Manzanet-Daniels, JJ.
Andrias, J.E, and Feinman, J., dissent in a memorandum by Andrias, J.E, as follows: Defendant’s abrupt, halting, and furtive movements provided the police with an objective credible reason for asking defendant if he was a resident of the New York City Housing Authority (NYCHA) building, and subsequent events led to a lawful stop and frisk. Accordingly, because defendant’s suppression motion was correctly denied, I respectfully dissent, and would affirm the judgment convicting defendant of attempted criminal possession of a weapon in the fourth degree and attempted possession of ammunition.
The uniformed police officers entered the building to check on other officers stationed inside. As the officers made their way towards the lobby, they saw defendant descending the stairs. When defendant saw the officers, he froze, jerked back, began to retreat, then stopped and stood on the stairs. Based on defendant’s reaction, and given the drug-prone nature of the building, the officers “suspected [defendant of] trespassing,” and asked him to come down the stairs to “make sure if he lived in the building.”
Defendant initially told the officers that he lived there. However, when asked for identification, he began to stutter, and changed his story to say that he was visiting his girlfriend. Although defendant stated that he had his identification in his *452 pocket, he began moving his hands “all over the place, especially around his chest area,” which the officers interpreted to be threatening and indicative of possession of a weapon. To “take control of the situation” before it could “get out of hand,” an officer grabbed defendant’s left arm and brought it behind defendant’s back, which caused defendant’s open jacket to open up further and reveal a silver pistol in the netted interior coat pocket. One officer removed the pistol from the pocket, and another handcuffed defendant.
The New York Police Department is the lawful custodian of NYCHA apartment buildings, and its duties include keeping the buildings free of trespassers (People v Williams, 16 AD 3d 151 [1st Dept 2005], lv denied 5 NY3d 771 [2005]). When the officers observed defendant in a drug-prone building and saw him freeze, jerk back and begin to retreat when he saw them, they reasonably suspected him of trespassing and had an objective credible reason to ask him whether he lived there, which constituted a level one request for information (see People v Crawford, 279 AD2d 267, 267 [1st Dept 2001] [“Defendant, upon exiting the ground floor apartment, looked at the officer and started walking up the staircase, whereupon he abruptly reversed course. The officer, therefore, had an ‘objective credible reason’ to ask defendant whether he lived there”], lv denied 96 NY2d 799 [2001]; People v Lozado, 90 AD3d 582, 583 [1st Dept 2011] [“Police officers conducting a nighttime vertical patrol of a Housing Authority building saw defendant coming up the stairs in a ninth floor stairwell. When defendant saw the police, he ‘paused’ and ‘looked around,’ displaying ‘nervous’ behavior. These circumstances provided an officer with an ‘objective credible reason’ to ask defendant where he was heading”], lv denied 18 NY3d 925 [2012]; People v Hendricks, 43 AD3d 361, 363 [1st Dept 2007] [where building “had a history of drug activity and trespassing, and although defendant’s activities were not necessarily indicative of criminality, the officer was warranted in making an inquiry to determine if defendant was legitimately in the building”]).
Matter of Michael F. (84 AD3d 468 [1st Dept 2011]), on which the majority relies, involved uniformed officers approaching a group of young men congregating on a street corner, not inside a NYCHA building. It is not dispositive of the right of the officers in this case, who were assigned to patrol NYCHA buildings, to make a level one request for information after they observed defendant engage in behavior that was inconsistent with that of a resident or guest when he saw them in the lobby. Nor is there any basis upon which to disturb the court’s credibility determi *453 nations, which are supported by the record (see People v Tinort, 272 AD2d 206 [1st Dept 2000], lv denied 95 NY2d 872 [2000]).
When defendant said that he lived in the building, the request to see his identification was reasonably tailored to address the officer’s suspicion that defendant was trespassing. When defendant changed his story, stuttered, and began moving his hands “all over the place, especially around his chest area,” although he had said his wallet was in his pocket, the officers reasonably interpreted defendant’s actions to be indicative of possession of a weapon, and reasonably suspected that they were in danger of physical injury. This provided an objective basis for the frisk that resulted in the recovery of the loaded pistol concealed in defendant’s interior jacket pocket (see People v West, 71 AD3d 435, 436 [1st Dept 2010] [“defendant’s presence in the lobby of a public housing apartment building known as a drug-prone location,” the officer’s observations of defendant’s actions upon seeing the officer, defendant’s responses to the arresting officer’s reasonable inquiry as to defendant’s reason to be there, and the “movement of defendant’s hands to his bulging pockets” all justified the officer’s decision to frisk him], lv denied 15 NY3d 758 [2010]; People v Robinson, 278 AD2d 808, 809 [4th Dept 2000] [“when defendant was asked to produce identification, his hand went first to his jacket pocket before he retrieved his wallet from the back pocket of his pants,” which “provided the officers with a founded suspicion that criminal activity was afoot” and “established a reasonable suspicion that defendant posed a threat to their safety” (internal quotation marks omitted)], lv denied 96 NY2d 787 [2001]).

 The arrest paperwork omitted any mention of defendant attempting to go back upstairs. On cross, the officer explained that while defendant “at *450 tempted” to walk back up the stairs, he had never actually walked back up the stairs.