OPINION OF THE COURT
Alexander, J.
Wilfredo Rosario appeals by leave of a Judge of this Court from an order of the Appellate Division affirming his conviction of the crime of murder in the second degree. His principal contention on this appeal is that the "fellow officer” rule, *585 which entitles a police officer to rely on a communication from another police officer and to act upon it in making an arrest, does not apply to this auxiliary officer because he is not a "police officer” or a "peace officer.”
We disagree and thus affirm the order of the Appellate Division.
I
As found by the courts below, Erick Hernandez, an auxiliary police officer, while on patrol in Upper Manhattan, received a radio run of a description of a suspect involved in a fatal stabbing nine days earlier who was seen in the vicinity. The suspect was described as a 25- to 30-year-old male Hispanic, 5-feet 8-inches to 5-feet 11-inches tall, with a dark complexion, wearing light blue pants and a black shirt, walking south on Broadway from 177th Street. This description had been received at the precinct through an anonymous telephone call and was virtually identical to one provided to the police by an eyewitness at the scene of the crime shortly after the stabbing. It was relayed to the officers on patrol including the auxiliary police officers.
Shortly thereafter, a Hispanic man approached Hernandez and three other auxiliary officers and informed them that he had seen the suspect. Hernandez concluded that the description of the man spotted by the Hispanic man matched that given in the radio run. He then conveyed this information and its source to uniformed police officers in a radio patrol car. The uniformed police and the auxiliary officers canvassed the area in the patrol car but failed to locate the suspect. The auxiliary officers resumed their foot patrol.
Within a matter of minutes, Hernandez spotted a person, who matched the description and information given to him, walking north on Broadway. As that person walked in the direction of Hernandez and his fellow auxiliary officers, he looked at them, slowly turned around and began walking in the opposite direction. The auxiliary officers followed and Hernandez flagged down another radio patrol car. Sergeant Belton spoke to one of the auxiliary officers and then to Hernandez from the patrol car. Hernandez pointed to the person they were following, described him and informed the sergeant that he was a murder suspect. Sergeant Belton and her fellow police officer pursued the man in the patrol car and quickly overtook him. With guns drawn, they stopped him, *586 frisked and held him. Backup police officers from the first radio patrol car with whom Hernandez had communicated arrived moments later and confirmed Hernandez’s information. The suspect was taken to the 34th precinct station house, where he was interrogated. He made a statement in which he offered an alibi. Thereafter, he was placed in a lineup and identified as the murderer.
At a combined Mapp, Wade and Huntley hearing, defendant sought to suppress jewelry taken from him, the statement made at the station house and the lineup identification, arguing, inter alia, that the evidence was obtained as the result of an unconstitutional seizure, that the statement was involuntary and that the lineup was unreasonably suggestive. The hearing court denied suppression,* finding that auxiliary Officer Hernandez, acting as the "eyes and ears of the police * * * had acquired information and made observations which provided probable cause to believe that the defendant had committed a crime.” The court held that when Hernandez directed Belton to apprehend defendant, Belton was justified in doing so. A jury subsequently convicted defendant of murder in the second degree.
The Appellate Division affirmed, concluding that the hearing court’s determination that defendant’s warrantless arrest was based on probable cause was amply supported by the record (162 AD2d 388).
II
A
Defendant argues that the courts below erred in applying the "fellow officer” rule to auxiliary Officer Hernandez because he was not a "police officer” or a "peace officer” and had no authority to make an arrest. Thus, the argument goes, defendant’s arrest, based solely on a communication from Hernandez to Sergeant Belton, was illegal. Moreover, defendant argues, even if we determine that the "fellow officer” rule was properly applied to auxiliary Officer Hernandez, the arrest nevertheless should be deemed illegal because Hernandez lacked probable cause.
This latter argument is without merit and requires no *587 extended discussion. As there is evidence in the record to support the determination of the courts below that there was probable cause for the arrest, that issue is beyond this Court’s further review (see, People v Chipp, 75 NY2d 327, 339, cert denied — US —, 111 S Ct 99 [1990]; People v McRay, 51 NY2d 594).
However, that Hernandez possessed sufficient information upon which to reasonably believe that defendant had committed the alleged homicide does not alone render the arrest legal. The arrest may be upheld if the "fellow officer” rule was properly applied to Hernandez as an auxiliary police officer, such that Sergeant Belton was justified in relying upon Hernandez’s directive in making the arrest. We conclude that the rule is properly applied under the circumstances of this case.
B
The New York City Auxiliary Police program is the largest in the United States, comprising more than 8,000 men and women. These men and women, whose uniforms are similar to police officers, assist the police in crime deterrence by their uniformed presence, serve as a trained group of citizens in case of a civil defense emergency or natural disaster and promote better relations between the community and the New York City Police Department (People v Luciani, 120 Misc 2d 826, 828-829).
Although auxiliary officers perform foot patrol, traffic and crowd control, cover special events and conduct other nonhazardous jobs that a regular police officer would perform in uniform, their primary function is to observe and report ongoing criminal activity. Indeed, the New York City Police Department, which recruits, trains and supervises auxiliary officers has described these officers as being the "eyes and ears” of the police department (id., at 830).
In keeping with their responsibilities as aides to the police department, auxiliary officers are required to undergo an extensive training program. They must complete a 52-hour course which includes instruction in police science, criminal law, self-defense, first aid, police procedure and crowd psychology (id., at 830).
Defendant argues, as does the dissent, that notwithstanding these qualifications and the training and purpose of auxiliary officers, the "fellow officer” rule should not apply because auxiliary officers are not police officers or peace officers. They *588 are not given the extensive and comprehensive training as are police officers and thus, do not qualify for the presumption of reliability accorded under the "fellow officer” rule and therefore, should not be granted the authority to direct an arrest. We disagree and conclude that the "fellow officer” rule is properly applied here because auxiliary Officer Hernandez possessed sufficient training and ability to make the determination that there was probable cause to support defendant’s arrest. Applying the rule to this case is consistent with the underlying rationale of the "fellow officer” rule and furthers the objective of aiding the police in law enforcement.
Under the "fellow officer” rule, "[a] police officer is entitled to act on the strength of a radio bulletin or a telephone or teletype alert from a fellow officer or department and to assume its reliability.” (People v Lypka, 36 NY2d 210, 213.) Officers making arrests based on the transmitted information are justified in doing so because the officer or department furnishing that information presumptively possesses the requisite probable cause which justifies the warrantless arrest. However, where a defendant challenges an arresting officer’s warrantless action, the presumption of probable cause disappears and it becomes incumbent upon the People to establish that the officer or agency imparting the information, in fact possessed the probable cause to act (see, People v Lypka, supra, at 214; see also, Whiteley v Warden, 401 US 560, 568; People v Jennings, 54 NY2d 518, 522; People v Havelka, 45 NY2d 636, 641; People v Horowitz, 21 NY2d 55, 60; see generally, 2 LaFave, Search and Seizure § 3.5 [2d ed]). If the People meet their burden of proof, then the warrantless action may be deemed reasonable and lawful. Thus, an arresting officer is deemed to act with probable cause when making an arrest at the direction of another law enforcement officer who has the requisite probable cause (see, People v Lopez, 95 AD2d 241; see also, People v Horowitz, supra, at 60).
The "fellow officer” rule has been employed in a variety of circumstances and through the use of various modes of communication including telephone, teletype and computer. The rule has been applied whether the communication was between superior or fellow officers within the same department, different agencies or agencies at different levels within a State and between officials in different States as well as between Federal and State or local authorities (2 LaFave, Search and Seizure § 3.5 [b], at 9). The pertinent inquiry in all situations has been directed to the nature and reliability of the informa *589 tian possessed by the person or agency transmitting the information. Unless that officer or agency is shown to have possessed probable cause, the warrantless arrest based upon that transmission may not stand.
We recognize that the training of auxiliary officers is not as extensive as that required of police officers. However, the training they receive and the purposes they serve in aiding law enforcement provide sound policy reasons for applying the "fellow officer” rule to auxiliary officers and militate against denying the police the benefit of their aide and assistance as the dissent would. Especially is this so in circumstances as revealed by this record. Indeed, application of the rule here serves the purpose of better enabling law enforcement to do its job but does not unduly jeopardize or impact on the rights of citizens.
This record contains undisturbed findings, amply supported, that auxiliary Officer Hernandez had sufficient information upon which to reasonably believe that defendant had committed the homicide. Thus, he had probable cause to direct defendant’s arrest.
A different result is not required because auxiliary Officer Hernandez is considered a peace officer only under limited circumstances (see, CPL 2.10 [26]; L 1951, ch 784, § 105), and therefore has no power to arrest beyond that of a private citizen. In People v Lypka (36 NY2d 210, supra), lack of authority to conduct a warrantless arrest did not deter this Court from determining that the "fellow officer” rule applied to out-of-State law enforcement officers. Similarly, under the facts of this case, Hernandez’s lack of authority to make a warrantless arrest should not stand as a bar to applying the "fellow officer” rule to him. We have considered defendant’s remaining arguments and conclude that they are without merit.
Accordingly, the order of the Appellate Division should be affirmed.

 The People agreed not to use the statement in connection with their direct case but reserved the right to use it on cross-examination should the defendant testify.