OPINION OF THE COURT
Herbert I. Altman, J.
Defendant moves for an order suppressing physical evidence and identification testimony. My findings of fact and conclusions of law are as follows.
The sole witness testifying at the hearing was Sergeant John Perniciaro, whose testimony I credit.
On April 28, 1992 Sergeant Perniciaro received a radio transmission from an undercover officer that a male hispanic wearing a brown coat, blue jeans and a black hat had sold him cocaine inside a grocery store at 100 Stanton Street. Entering the store with other officers, Sergeant Perniciaro saw defendant, who matched the description transmitted by the undercover officer. He was standing behind the counter near the cash register and was the only person in the store. Defendant was handcuffed and the police then made a cursory search of the store area and the connecting bathroom, but found nothing incriminating in plain view. Sergeant Perniciaro went to the cash register and seized the cash lying in the partially open drawer. He recovered $71 dollars, including $20 of prerecorded buy money.
Defendant was taken out of the store and, while on the sidewalk, was identified by the undercover officer, who was driving by in an automobile, as the person who had sold the narcotics. The police then secured the store by rolling down the steel doors which prevent entry into the store and locking the gate.
When he was asked why he searched the cash register, Sergeant Perniciaro stated that it was "routine procedure in a situation where drugs are sold out of a store that we remove all currency from the cash register and voucher it.” Upon cross-examination he added that, "when the police close a store down, money within the register we routinely take and invoice for security purposes, and we also check it for prerecorded buy money. * * * Money left in a store unattended makes us accountable for it. We invoice it.”
Upon seeing that defendant fit the description of the individual who, according to the undercover officer’s radio transmission had sold the cocaine, the police had probable cause to arrest (People v Lypka, 36 NY2d 210; People v *707 Rosario, 78 NY2d 583). As the arrest was supported by probable cause, the drive-by identification procedure utilized was proper as a confirmatory identification made by a trained police officer within minutes of the arrest (People v Morales, 37 NY2d 262; People v Wharton, 74 NY2d 921).
The search of the cash register by the police is more problematic. The People seek to justify it as either a search of the grabable area incident to an arrest, or as an inventory search.
A search of the area within an arrestee’s immediate control must be contemporaneous with the arrest (Chimel v California, 395 US 752) and supported by one of two justifications — the safety of the police or the desire to protect evidence from destruction (People v Gokey, 60 NY2d 309, 312). The first of these requirements is easily met, as the search of the cash register took place within a few minutes of the defendant’s arrest. There is no evidence, however, indicating that the police had any concern whatever as to either of the two requisite justifications. Sergeant Perniciaro never testified as to a fear for his safety or a belief that a weapon was hidden in the cash register, nor did he state any interest in securing evidence. Although it was ultimately determined that some of the currency taken was buy money, the witness did not testify to a reasonable belief that he would find such evidence in the register. To the contrary, he testified that the money was only taken because the police always did so, as a matter of routine, to safeguard money for which they might otherwise be held accountable. As was the case in Gokey, the absence of any exigency is indicated by the police officer’s failure to take control of the register immediately upon entry into the store, while there might have been real danger with regard to its contents. Defendant was handcuffed and surrounded by seven members of the police department by the time the money was taken (cf., People v Gokey, supra, at 313-314). The search of the register, therefore, cannot be upheld as one incident to a lawful arrest.
There are also considerable difficulties in attempting to justify the conduct as an "inventory search.” There is no authority in this jurisdiction for the proposition that, without more, the police may, following the arrest of the owner or sales clerk, constitutionally seize the contents of a cash register in a store when that register can be locked or otherwise secured. Indeed, research has not revealed such authority in any other jurisdiction.
*708 Inventory searches are justified in very limited circumstances — automobiles may be inventoried and searched by the police in certain situations (see, e.g., People v Gonzalez, 62 NY2d 386), as may the personal effects of an arrestee (People v Greenwald, 90 AD2d 668; People v Perel, 34 NY2d 462; United States v Robinson, 414 US 218). The rationale for the inventory search of an automobile was explored by the Supreme Court in South Dakota v Opperman (428 US 364, 369), which held such a search to be a routine administrative search governed by a standard of reasonableness. "These procedures developed in response to three distinct needs: the protection of the owner’s property while it remains in police custody * * * the protection of the police against claims or disputes over lost or stolen property * * * and the protection of the police from potential danger * * *. The practice has been viewed as essential to respond to incidents of theft or vandalism.”
This reasoning is based on the premise that the police have little choice but to take control of the vehicle following the driver’s arrest, as abandoning it on the street all but guarantees the evils sought to be avoided by the impounding. The same premise underlies the inventory search at the police station of one arrested in a public place — the police cannot just leave the property on the sidewalk (see generally, discussion in 2 Lafave, Search and Seizure § 5.5 [b], at 537 [2d ed]; United States v Chadwick, 433 US 1, 19 [dissenting opn of Blackmun, J.]).
In contrast there was here no need to take control of the cash in the cash register. The arrest took place not in a public place, but in a commercial premises which were later apparently easily locked and secured. Indeed, there seems no difference in terms of the security of valuables between the store in which defendant was seized and his apartment. Had he been arrested in his home the police could not have ransacked it for valuables and then inventoried and stored them until the defendant returned. The fact that the store may have been in a "high crime” area, as the People contend, does not lessen the degree of constitutional protection due defendant. If the police were concerned that he required their services to safeguard the money, they could have offered them, but they could not constitutionally impose them on the assumption that they were required (see, Abel v United States, 362 US 217).
A final objection to permitting the search to stand as an inventory search is the lack of a police regulation mandating *709 such a search (Colorado v Bertine, 479 US 367; South Dakota v Opperman, supra; People v Solano, 148 AD2d 761, 762). The People have not proffered any regulation concerning the inventorying of cash at a commercial premises which is closed by the police. Sergeant Perniciaro testified not to the existence of a regulation, but to a routine practice. It is unclear whether the procedure is employed in every instance, or merely "when drugs are sold out of a store.” If the latter is the case, the police would appear to be evading search warrant requirements in their search for evidence of crime.
For the foregoing reasons, defendant’s motion to suppress the currency seized is granted.