Robert J. CAMPANARO, Plaintiff,

v.

CITY OF ROME; Raymond L. Arcuri; Scott P. Hall; Michele J. Manuele; William Netzband; Richard Hahn; Edward Stevens; David Bruce; John Doe; G. Patrick Miller; and Merino J. Ciccone, Defendants.

No. 95–CV–444 (FJS).

United States District Court,
N.D. New York.

April 2, 1998.

Lockwood, Golden Law Firm, Utica, NY, for Plaintiff, Stephen L. Lockwood, of counsel.

Corporation Counsel's Office, City of Rome, Rome, NY, for Defendants City of Rome, Arcuri, Hall, Manuele, Netzband, Hahn, Stevens, Bruce, John Doe, Miller and Ciccone, Gregory J. Amoroso, of counsel.

## MEMORANDUM DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 alleging claims for false arrest and malicious prosecution by Defendant police officers.[1] Additionally, Plaintiff brings a civil rights claim alleging municipal liability on the part of the City of Rome for the Plaintiff's arrest and prosecution. Defendants have counterclaimed for attorneys fees, damages for emotional distress, and sanctions, alleging that Plaintiff's suit is frivolous, unfounded and brought solely to harass defendants.

---

**1.** Plaintiff also brings parallel false arrest and malicious prosecution claims under New York tort law.

Presently before the Court is Defendants' motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure on the merits of the Plaintiff's claims. Defendants also move for summary judgment on the ground of qualified immunity for Defendants Manuele, Stevens, Hahn, Bruce, Miller, and Ciccone.[2]

### Facts

Early in the morning of January 22, 1994, Defendants Raymond Arcuri and Scott Hall were present in the "Rhine Haus," a bar on Dominick Street in Rome, New York. They were off duty and in civilian clothes. Plaintiff was also at the bar, in the company of Robert McLean and Gene Clark, who are not parties to this action. Defendant Hall was acquainted with Plaintiff and McLean, and Plaintiff admits that he knew Defendant Hall prior to the events at issue here.

At approximately 2:15 a.m., Arcuri and Hall got in a fight with McLean and Clark. Who initiated the fight and what events led to the argument are disputed. Plaintiff was not initially involved in the altercation.

Plaintiff admits that he entered the fracas by grabbing Hall, forcibly pulled him off McLean and throwing him in such a was as to cause Hall to fall to the ground. Plaintiff contends, and Defendants dispute, that at that point in the altercation Defendant Hall grabbed him by the neck, forcing the Plaintiff to push Hall away. Plaintiff alleges that later during the altercation Officer Hall "came at him." It is undisputed that Plaintiff then struck Defendant Hall in the face. Plaintiff contends, however, that he only struck Hall because Hall was coming at him.

Defendant Bruce, an on-duty, uniformed officer, received reports of a fight and responded to the Rhine Haus as the altercation was ending. He and other uniformed officers arrested McLean and Clark at the direction of Defendant Hall. Defendant Bruce instructed the Plaintiff to remain present at the bar, but the plaintiff left the premises and was arrested by Defendant Hall and Defendant Stevens, who was one of other the responding officers on duty. They arrested Plaintiff on the street behind the Rhine

Haus. Defendant Manuele interviewed Defendants Hall and Arcuri at the scene and, based on information they provided, signed a felony complaint charging Plaintiff with Assault in the Second Degree.

Defendant Hall suffered a black eye, bruises to his face, and a great deal of pain. A physician examined him at the hospital shortly after the fight and six months later he testified to a grand jury that he continued to suffer headaches.

The Rome Police Department conducted multiple investigations into the events which took place at the Rhine Haus that night. The investigations were undertaken at the direction of Defendants Ciccone and Miller and were conducted by, among others, Defendants Hahn and Netzband. The investigations found no wrongdoing on the part of Defendants Hall and Arcuri.

Plaintiff was indicted by the Grand Jury for assaulting Defendants Arcuri and Hall, but was subsequently acquitted at trial.

### Discussion

Under Rule 56(c), summary judgment is warranted if, when viewing the evidence in a light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 457, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.,* 991 F.2d 49, 51 (2d Cir.1993). To survive a motion for summary judgment the non-movant must do more than present evidence that is merely colorable, conclusory, or speculative. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-movant must offer evidence that demonstrates that there are issues of fact that must be decided by a fact finder because "they may reasonably be decided in favor of either party." *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990).

As stated, Plaintiff brings federal claims for: (1) false arrest, alleging that he was arrested by the Defendants without probable

---

**2.** Defendants do not seek summary judgment on    their counterclaim.

cause; (2) malicious prosecution, alleging that he was prosecuted without probable cause and with malice by the Defendants; and (3) municipal liability alleging that the City of Rome had a custom or policy of condoning false arrests by its police officers.[3] The Court will consider Plaintiff's claims seriatim.

## I. False Arrest

The elements of the constitutional torts of false arrest and malicious prosecution are substantially the same as the elements of the same claims under New York common law. *See, e.g., Singer v. Fulton County Sheriff,* 63 F.3d 110, 114, 118 (2d Cir.1995), *cert. denied,* 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996); *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). A plaintiff alleging false arrest must show four elements: (1) that the defendant intended to confine the plaintiff, (2) that the plaintiff was conscious of the confinement, (3) that the plaintiff did not consent to the confinement; and (4) that the confinement was not otherwise privileged. *See Broughton v. State of New York,* 37 N.Y.2d 451, 456–57, 373 N.Y.S.2d 87, 89, 335 N.E.2d 310 (1975). In the instant action only the fourth element is in dispute.

In the case of a warrantless arrest, the existence of probable cause constitutes justification and is a complete defense to an action for false arrest. *See Weyant,* 101 F.3d at 852 (citing *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994)). Probable cause exists when the arresting officer has knowledge "sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *O'Neill v. Town of Babylon,* 986 F.2d 646, 650 (2d Cir.1993) (quoting *Calamia v. City of New York,* 879 F.2d 1025, 1032 (2d Cir.1989)). Probable cause may be determined by the court as a matter of law "if

there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant,* 101 F.3d at 852. In doing so, probable cause must be evaluated objectively, based on the facts known to the arresting officers at the time of the arrest. *United States v. Martinez,* 465 F.2d 79, 81 (2d Cir.1972).

In the present case, it is undisputed that the Plaintiff grabbed Defendant Hall and threw him so that he fell to the ground. It is also undisputed that the Plaintiff struck Defendant Hall in the face, and that Defendant Hall suffered a black eye and headaches that continued for six months after the fight.[4] Based on these undisputed facts, there appears to be probable cause to believe that the Plaintiff intentionally or recklessly caused injury to another in violation of New York Penal Law § 120.05 ("Assault in the Third Degree"). This finding is further buttressed by the grand jury's actions in charging the Plaintiff with Assault in the Second Degree.[5] An arrest is valid when the crime for which the arrest was made and the crime for which probable cause exists are "in some fashion related." *Martinez,* 465 F.2d at 81 (quoting *Mills v. Wainwright,* 415 F.2d 787, 790 (5th Cir.1969).) Thus, the Court finds that the presence of probable cause for the Plaintiff's arrest bars both his constitutional and common law false arrest claims.

As to the other defendant police officers, under New York's "fellow officer rule" "an arresting officer is deemed to act with probable cause when making an arrest at the direction of another law enforcement officer who has the requisite probable cause." *People v. Rosario,* 78 N.Y.2d 583, 588, 578 N.Y.S.2d 454, 457, 585 N.E.2d 766 (1991); *see People v. Horowitz,* 21 N.Y.2d 55, 60, 286 N.Y.S.2d 473, 476–77, 233 N.E.2d 453 (1967). Because Defendant Hall had probable cause to arrest Plaintiff, the other officers on the scene were entitled to rely on his directive to arrest Plaintiff. Therefore, the Court finds

---

**3.** As stated, Plaintiff also brings New York common law claims for false arrest and malicious prosecution.

**4.** Plaintiff contends that there is a dispute as to his involvement in assaulting Defendant Arcuri. This is not a material issue in light of his admission that he hit Defendant Hall.

**5.** A grand jury must find by competent and admissible evidence that there is reasonable cause to believe that the person charged committed the offense charged in order to return an indictment. *See* N.Y. Penal Law § 190.65(1) (McKinney 1993).

that Defendants Arcuri, Manuele, Netzband, Hahn, Stevens, Bruce, "Doe", Miller, and Ciccone must be granted summary judgment on Plaintiff's false arrest claims as well.[6]

## II. Malicious Prosecution

In New York, a plaintiff alleging malicious prosecution must plead and prove four elements: (1) commencement or continuance of a criminal proceeding against the plaintiff; (2) lack of probable cause for the proceeding; (3) existence of actual malice; and (4) termination of the proceeding in the plaintiff's favor. *See DiBlasio v. City of New York,* 102 F.3d 654, 657 (2d Cir.1996); *Broughton v. State of New York,* 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310 (1975). Presently at issue are the elements of lack of probable cause and actual malice.

Determination of probable cause for malicious prosecution is essentially the same as for false arrest except that it must be evaluated in light of facts known or believed at the time the prosecution is initiated, rather than at the time of arrest. *See Dukes v. City of New York,* 879 F.Supp. 335, 342 (S.D.N.Y.1995). A finding of probable cause to arrest will defeat a malicious prosecution claim unless the plaintiff can demonstrate that additional facts came to light after arrest that would negate probable cause. *See id.* Additionally, because Plaintiff was indicted by a grand jury, Defendants are entitled to a legal presumption that the indictment was procured with probable cause. *See Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994); *Colon v. City of New York,* 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 456, 455 N.E.2d 1248 (1983). The plaintiff can overcome the presumption only by a showing that the indictment was procured through fraud, perjury, the suppression of evidence or other bad faith police conduct *See Bernard,* 25 F.3d

at 104 (quoting *Colon* at 83, 468 N.Y.S.2d at 456, 455 N.E.2d 1248).

To survive a motion for summary judgment, Plaintiff must present some admissible facts and may not rely on bare allegations of facts, ultimate or conclusory facts, or legal conclusions. *See, e.g., BellSouth Telecomm., Inc. v. W.R. Grace & Co.,* 77 F.3d 603, 615 (2d Cir.1996). Here, Plaintiff has presented no evidence of fraud, perjury, suppression of evidence or any other bad faith conduct which would permit an inference that the indictment was improperly obtained. Plaintiff claims that the presentation of evidence was in bad faith because the prosecution could have presented many witnesses who did not see the Plaintiff strike either Officer Hall or Officer Arcuri. This point is irrelevant because the Plaintiff himself admitted to pushing and punching Officer Hall. Since Plaintiff has failed to carry his burden on summary judgment, the Court finds that the Plaintiff's grand jury indictment is sufficient to conclude that probable cause existed for Plaintiff's prosecution. Accordingly, the Defendants' motion for summary judgment on the Plaintiff's malicious prosecution claims is granted.[7]

## III. Municipal Liability Claim

Plaintiff's municipal liability claim alleges that the City of Rome had a de facto policy of failing to train or supervise its police officers which caused a violation of the Plaintiff's constitutional rights. It is well settled that municipal liability under 42 U.S.C. § 1983 may not be founded solely on a municipality's employment of a tortfeasor. *See Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally, municipalities can be held liable for a constitutional injury when the injury is inflicted by the government's "law makers or by those edicts

---

6. In any event, those officers would be entitled to qualified immunity because it would be reasonable for officers in their situation to rely on the representations of a fellow officer as to the existence of probable cause to arrest. *See Shaw v. City of New York,* 95 Civ. 9325, 1997 WL 187352 (S.D.N.Y. Apr.15, 1997); *Signorile v. City of New York,* 887 F.Supp. 403, 417–20 (E.D.N.Y.1995); *Beal v. City of New York,* 92 Civ. 0718, 1994 WL

163954, at *4 (S.D.N.Y. Apr.22, 1994); *Miloslavsky v. AES Eng'g Society, Inc.,* 808 F.Supp. 351, 355 (S.D.N.Y.1992); *Kaufman v. City of New York,* 87 Civ. 4492, 1992 WL 247039, at *5 (S.D.N.Y. Sept.17, 1992).

7. The Court need not reach the element of "malice."

or acts which may fairly be said to represent official policy." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121–22, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (quoting *Monell,* 436 U.S. at 694). In the present case, Plaintiff has failed to even establish a jury question that he suffered a constitutional injury; thus, a *Monell* claim based on the same injury must fail as well.[8]

### Conclusion

Having considered the parties' submissions, the entire record, and the applicable law, it is hereby

ORDERED that the Defendants' motion for summary judgment is GRANTED.[9] It is further ORDERED that Plaintiff's complaint is DISMISSED in its entirety.

**IT IS SO ORDERED.**

---

8. Even if the issue of the underlying constitutional injury was in doubt, Plaintiff has failed to present evidence that Defendant City of Rome had a policy of condoning police misconduct or that there was such an obvious need for more or better police supervision or training that City of Rome's alleged failure amounted to deliberate indifference. Municipalities may be held liable under § 1983 for failure to train or supervise police officers, but only when such failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). To prove deliberate indifference, a "plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious." *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995). Thus, in order to premise municipal liability on a policy of "failing to train," Plaintiff must show a previous pattern of constitutional violations, or other evidence which would put the municipality on notice that there was a training deficiency which would inevitably lead to the future deprivation of the plaintiff's constitutional rights. *See Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997). Plaintiff has failed to provide any evidence that there were previous complaints of civil rights violations by City of Rome police officers that would make it "obvious" to the City that unconstitutional conduct was occurring. *See Harris,* 489 U.S. at 390; *Vann,* 72 F.3d at 1049; *see also, Sarus v. Rotundo,* 831 F.2d 397, 401–02 (2d Cir.1987).

9. No action is taken with respect to Defendants' counterclaim.