**Edward J. RAYMOND, Plaintiff,**

v.

**Timothy E. BUNCH and William C. Smith, Individually, and in their Official Capacities as Members of the Town of Ulster Police Department, Defendants.**

**No. 98–CV–1739.**

United States District Court,
N.D. New York.

April 11, 2001.

Richard L. Mott, Albany, NY, for Plaintiff.

Ryan & Smallacombe, PLLC (Mario D. Cometti, of counsel), Albany, NY, for Defendants.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

■ On November 12, 1998, plaintiff Edward J. Raymond ("Raymond") commenced the instant action against defendants Town of Ulster Police Officers Timothy E. Bunch ("Ofr.Bunch"), and William C. Smith ("Sgt.Smith"), pursuant to 42 U.S.C. §§ 1983, 1985,[1] and 1988, alleging that the defendants violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Defendants now move for summary judgment on all claims against them, pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes. Oral argument was heard on December 21, 2000, in Albany, New York. Decision was reserved.

## II. FACTS

This action arises out of an arrest for an alleged drunk driving incident involving Raymond and the defendants. The following are the facts stated in the light most favorable to the nonmoving plaintiff.

On or about 6:30 a.m. on the morning of November 11, 1995, the Town of Ulster Police Department received a call on a cellular phone from Wayne Closi ("Closi"), a customer at the Dairy Mart on Leggs Mill Road in Lake Katrine, New York. Closi advised the police dispatcher that he had observed an individual at the Dairy Mart who appeared to be drunk, and who had just purchased gasoline and was preparing to drive away. Closi further advised the Ulster police that the individual was in a four-door blue Dodge with New York plate number F790JW. Based on this call, Ofr. Bunch was dispatched to the store.

When Ofr. Bunch arrived at the store, he observed the plaintiff sitting in a car which matched the description and plate number which he had been given. He spoke briefly with Raymond, then went inside the Dairy Mart to speak with Closi.[2] Inside the Dairy Mart, Closi and a Dairy Mart employee, Nora Osetek ("Osetek"), both conveyed their observations of plaintiff, i.e., that he had difficulty pouring a cup of coffee, that he was staggering, that his speech was slurred, and that he smelled strongly of alcohol. Closi then directed Ofr. Bunch to the vehicle in which plaintiff was sitting.

---

1. Though plaintiff has invoked Section 1985, he has proffered no evidence of a conspiracy based upon class or race-based discriminatory animus. *See Malatesta v. New York State Div. of State Police,* 120 F.Supp.2d 235, 241 (N.D.N.Y.2000) ("Section 1985 does not provide a remedy for conspiracies that are not based on 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'") (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 101–02, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). Accordingly, this claim must be dismissed.

2. There is dispute over exactly what was said between Ofr. Bunch and Raymond. Ofr. Bunch claims that he instructed Raymond to remain at the Dairy Mart. Raymond denies this assertion. There is also a dispute as to whether Ofr. Bunch went into the store and spoke with Closi before speaking with Raymond, or whether Raymond was summoned back into the store because of an argument that was escalating into a potential physical altercation. These disputes are not relevant to this decision.

At some point during this exchange, Ofr. Bunch observed plaintiff drive off from the Dairy Mart. Sgt. Smith, who was en route to the store to assist Ofr. Bunch, met Ofr. Bunch on the road.[3] The two then followed plaintiff to his home—which was approximately a quarter of a mile from the Dairy Mart and visible from the store's parking lot—in their separate vehicles.

When the officers arrived at plaintiff's home, he was already inside. The officers knocked on his door, and told plaintiff that they had his car keys and that they were taking them to the police station.[4] When plaintiff opened the door, the officers forced their way into plaintiff's home. Sgt. Smith then punched, kicked, and pepper sprayed plaintiff.[5] Both defendants then handcuffed Raymond, and placed him under arrest. He was charged with drunk driving and resisting arrest, and was indicted by a grand jury on these charges on February 23, 1996.

Because plaintiff had refused a breathalyzer test at the time of his arrest, a chemical test refusal hearing was held in December of 1996 before a New York State Department of Motor Vehicles administrative law judge ("ALJ") pursuant to New York Vehicle and Traffic Law § 1194. Both defendants testified under oath at that hearing. The ALJ found that the defendants did not have probable cause to arrest him for drunk driving. Raymond was subsequently acquitted of the criminal charges by a jury. The instant action followed.

## III. STANDARD OF REVIEW

### A. Summary Judgment

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut*, 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "the litigant opposing summary

---

**3.** There is a dispute over what was said between the two officers. It is not clear whether Ofr. Bunch told Sgt. Smith that Raymond was definitely drunk, or whether he believed Raymond was drunk, but was not certain. This dispute is not material to the instant decision.

**4.** There is also dispute over this fact. Defendants claim that when they arrived at plaintiff's trailer, they found the door to his car open and the keys in the ignition. Plaintiff claims this is untrue, and that the keys which the officers had were ones that had been stuck in the ignition of a truck that had been parked in front of his trailer for some time. Plaintiff claims that he opened his front door only to see if the officers had successfully extricated those keys from the truck's ignition. Again, this dispute is not material to the instant decision.

**5.** There is also dispute over the amount of force used to effect the arrest of plaintiff; however, it is undisputed that he resisted this arrest and that he required no treatment for any injuries. (Reply Affidavit of Mario Cometti ¶ 39) (cited hereinafter as "Reply Affidavit ¶ __ ").

judgment 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

### B. *42 U.S.C. § 1983*

■ To recover damages under 42 U.S.C. § 1983, plaintiffs must show that: (1) "the conduct complained of was committed by a person acting under color of state law"; and (2) such "conduct deprived [plaintiffs] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Greenwich Citizens Comm., Inc. v. Counties of Warren and Washington Indus. Dev. Agency*, 77 F.3d 26, 29–30 (2d Cir.1996) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

### IV. *DISCUSSION*

The defendants are sued in both their official and individual capacities. The issues relevant to each basis for liability are discussed below.

### A. *Official Capacity*

■ Suits against municipal defendants in their official capacities are akin to suits against the municipality itself. Accordingly, liability may only be imposed in an "official capacity" suit under Section 1983 to the extent that the municipality itself could be held liable under that statute.

■ Municipal liability under Section 1983 is not derivative and cannot be based upon a theory of respondeat superior. In order to plead a Section 1983 claim against a municipal defendant, plaintiffs must specifically plead and prove (1) an official policy or custom that (2) causes the plaintiffs to be subjected to (3) a denial of constitutional rights. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The policy or custom need not be memorialized in a specific rule or regulation. *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir.1992). When discriminatory practices of city officials become "persistent and widespread," they may be considered to constitute a municipal custom or usage. *Id.* at 870–71. *See also Fiacco v. City of Rensselaer*, 783 F.2d 319, 326 (2d Cir.1986).

■ Although this rule "does not mean that the plaintiff must show that the municipality had an explicitly stated rule or regulation, a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991) (citations omitted). "The inference that a policy existed may, however, be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, or evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges" that its agents were violating citizens' constitutional rights. *DeCarlo v. Fry*, 141 F.3d 56, 61–62 (2d Cir.1998) (citing *Ricciuti*, 941 F.2d at 123 (citations omitted)).

■ In the instant case, plaintiff has wholly failed to either plead or prove a policy or custom of false arrest, malicious prosecution, or excessive force by the Town of Ulster Police Department. All that is present on the record of this case is the single incident involving the plaintiff. This showing is unquestionably insufficient to impose liability upon the defendants in

their official capacity. *Ricciuti*, 941 F.2d at 123. Accordingly, Raymond's claims are dismissed to the extent that they are pleaded against the defendants in their official capacity.

### B. *Individual Capacity*

As to each of the causes of action against the defendants in their individual capacities, defendants have advanced various arguments based on the merits of these claims.[6] The objections to each of plaintiff's four causes of action will be discussed in turn.

### 1. *False Arrest*

Raymond's first cause of action is for false arrest in violation of his rights under the Fourth Amendment to be free from unlawful seizure. Defendants argue for summary judgment as to this cause of action on the grounds that they had probable cause to arrest Raymond based on the statements of Closi and Osetek (as to the charge of driving while intoxicated), and Raymond's admission that he physically resisted the officers (as to the charge of resisting arrest).

The elements of false arrest and false imprisonment are (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *See Kirk v. Met-ropolitan Transportation Auth.*, 2001 WL 258605, *9 (S.D.N.Y.2001) (citing *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir.1996); *Broughton v. State of New York*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)). The only element at issue in this case is the fourth element.

The existence of probable cause to arrest the plaintiff is a complete defense to a claim for false arrest. *Okst*, 101 F.3d at 852. Moreover, indictment by a grand jury for the charges on which the plaintiff was arrested creates " 'at the very least, a presumption of probable cause.' " *Bordeaux v. Lynch*, 958 F.Supp. 77, 83 (N.D.N.Y.1997) (quoting *Woodard v. Hardenfelder*, 845 F.Supp. 960, 967 (E.D.N.Y. 1994)).[7]

Probable cause exists when officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 414 (2d Cir.1999) (quoting *Weyant*, 101 F.3d at 852). The inquiry into the existence of probable cause is an objective one; the subjective beliefs of the arresting officer are irrelevant. *See Martinez v. Simonetti*, 202 F.3d 625, 633 (2d Cir.2000) (citing *Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

---

6. Defendants have also argued that they are entitled to qualified immunity for their actions in the instant case. Because the instant motion is decided on the merits of plaintiff's claims, it is not necessary to decide this issue. *See Horton v. Town of Brookfield*, 2001 WL 263299, *7 n. 2 (D.Conn.2001).

7. Raymond challenges the grand jury indictment, alleging that it was procured through the perjury of defendants. In support of this assertion, Raymond identifies various discrepancies between the deposition and grand jury testimony of the defendants. While such evidence would suffice to overcome the presumption of probable cause created by the indictment, it does not affect the outcome in the instant case because of the third party testimony of Closi and Osetek. Regardless of the presumptive effect of the grand jury indictment, it is found that probable cause did, in fact, exist in this case for the arrest of Raymond by the defendants based on the testimony of Closi and Osetek.

Summary judgment is appropriate in this case because there was a sufficient factual basis for the defendants to conclude that they had probable cause to arrest the plaintiff. The undisputed fact in this case is that Ofr. Bunch relied upon the independent observations of the nonparty witnesses Closi and Osetek in deciding that he had probable cause to arrest Raymond. Both Closi and Osetek stated to Ofr. Bunch that plaintiff was staggering, was slurring his speech, was having difficulty pouring a cup of coffee, and smelled of alcohol. These facts clearly support the reasonable conclusion that Raymond was under the influence of alcohol at the time Ofr. Bunch observed him drive off from the Dairy Mart, and would give a reasonable officer probable cause to conclude that plaintiff was committing the crime of driving while intoxicated.

Though Raymond questions the accuracy of the observations of Closi and Osetek,[8] the fact that Ofr. Bunch relied upon their statements in determining that he had probable cause to arrest him is uncontested. It is well-settled that a police officer may rely upon the statements of witnesses in determining the existence of probable cause for an arrest, *see Martinez*, 202 F.3d at 634 ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." (internal quotation marks omitted)), regardless of the ultimate accurateness or truthfulness of such statements. *See Bernard v.*

*United States*, 25 F.3d 98, 102 (2d Cir. 1994) ("[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." citing *Colon v. City of New York*, 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983)).

Plaintiff argues that regardless of whether or not Ofr. Bunch was privileged to rely upon the statements of Closi and Osetek, Sgt. Smith lacked an independent basis for concluding the existence of probable cause to arrest him. This argument lacks merit. It is also well-settled that a police officer may rely upon a fellow officer's determination of probable cause in making an arrest. *See People v. Rosario*, 78 N.Y.2d 583, 588, 578 N.Y.S.2d 454, 585 N.E.2d 766 (1991). Accordingly, because probable cause existed for the arrest of plaintiff, his false arrest claim must be dismissed.[9]

### 2. *Malicious Prosecution*

Raymond's second cause of action is for malicious prosecution. The elements of a cause of action for malicious prosecution under both Section 1983 and state law are: (1) the initiation and continuation of a criminal proceeding by the defendant against the plaintiff; (2) lack of probable cause for commencing the criminal proceeding; (3) actual malice; and (4) the termination of the proceeding in favor of the accused. *Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir.1994).[10]

---

**8.** Raymond offers the testimony of his former girlfriend, Brenda Locke ("Locke"), to prove that he was, in fact, not drunk at the time of his arrest, and had not been drinking at all on the morning of November 11, 1995. Whether or not this testimony is correct is not relevant, as it is undisputed that Locke was not present in the trailer at the time of Raymond's arrest, and the defendants did not talk to Locke at any time during the incident.

**9.** It is worth noting that in the absence of the third party testimony in this case, the disparity between the plaintiff's and the defendants' version of events would create a triable issue of fact as to the existence of probable cause.

**10.** Though not necessary to the resolution of this motion, it is of note that plaintiff's bringing such claims may also be required to demonstrate the existence of a post-arraignment

Just as with claims for false arrest, the existence of probable cause is an absolute defense to a cause of action for malicious prosecution. Because, as discussed above, probable cause existed for the arrest of Raymond by the defendants, this cause of action must also be dismissed.

### 3. *Excessive Force*

 Plaintiff's third cause of action is for excessive force, in violation of the Fourth Amendment prohibition against unreasonable seizures. Analysis of this claim requires a review of the objective reasonableness of the defendants' actions in light of the totality of circumstances surrounding the incident. *See Graham v. Connor*, 490 U.S. 386, 395–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Anderson v. Branen*, 17 F.3d 552, 560 (2d Cir.1994). The reasonableness inquiry must be undertaken without regard to the underlying motives or intent of the police officers. *See Graham*, 490 U.S. at 397, 109 S.Ct. 1865; *Calamia v. City of New York*, 879 F.2d 1025, 1034–35 (2d Cir.1989).

 In determining whether reasonable force was used, courts must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the opposing governmental interests at stake. See *Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *Lennon v. Miller*, 66 F.3d 416,

425 (2d Cir.1995). In particular, courts should examine: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect resisted or attempted to evade arrest by flight. *See Graham*, 490 U.S. at 397, 109 S.Ct. 1865; *Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998).

 In light of the foregoing, it is clear that plaintiff has failed to raise an issue of fact for trial. Viewing the evidence in the light most favorable to plaintiff, it appears as though he may have suffered some bruises and a black eye as a result of his encounter with the defendants. However, he admits to physically resisting his arrest, and he has failed to offer any credible proof that the amount of force used to effect his arrest was excessive.[11] While the mere fact that plaintiff resisted arrest is not dispositive of this issue, it *is* relevant to the inquiry. *See Freeman v. C.O. Perez*, 2000 WL 1508254 (S.D.N.Y.2000). Considering Raymond's admitted physical resistance of his arrest, and lack of any serious physical injury, it cannot be said that he has created an issue of fact as to whether the force used to effect his arrest was "so excessive that no reasonable officer would have made the same choice." *Lennon*, 66 F.3d at 426.

---

deprivation of liberty rising to the level of a Fourth Amendment violation because such claims are brought pursuant to Section 1983 are predicated upon a violation of the Fourth Amendment right to be free from unreasonable seizure. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir.1995); *but see Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir.1996) (addressing malicious prosecution claim without reference to requirement of deprivation of liberty). Because there was probable cause for the prosecution in this case, it is not necessary to resolve this issue.

11. Raymond claims to have been punched, kicked, and pepper sprayed by Sgt. Smith; however, he required no medical treatment for any injuries following his arrest. (Reply Affidavit ¶¶ 36, 39.) In addition, Raymond has alleged no excessive physical contact on the part of Ofr. Bunch. (Reply Affidavit ¶ 43.) Accordingly, even if he had created an issue of fact as to the use of force in this case, summary judgment would be appropriate as to the excessive force claim against Ofr. Bunch.

In fact, plaintiff's entire argument in opposition to dismissal of this claim is predicated upon the assertion that because the defendants lacked probable cause to arrest him, the use of *any* force was excessive. Because, as noted above, Ofr. Bunch and Sgt. Smith did have probable cause to arrest plaintiff, this argument must be rejected. Accordingly, Raymond's third cause of action for excessive force is dismissed.

#### 4. *Constitutional Assault Claim*

 Plaintiff's fourth cause of action is for deprivation of his substantive due process right under the Fifth and Fourteenth Amendment "to be free from being unlawfully assaulted and his liberty right to be secure in his person." This cause of action must be dismissed, as it is duplicative of his third cause of action for excessive force. *See Bisignano v. Harrison Central School Dist.*, 113 F.Supp.2d 591, 598 (S.D.N.Y.2000) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process,' must be the guide for analyzing these claims.") (quoting *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion of Rehnquist, C.J.)). *See also Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir.1999), cert. denied, 529 U.S. 1098, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000).

Plaintiff cites *Meredith v. Arizona*, 523 F.2d 481 (9th Cir.1975), in support of his claim that "assault" constitutes an independent federal constitutional cause of action. He is incorrect. The *Meredith* analysis has been overruled by the Ninth Circuit, and it is no longer good law. *See Armendariz v. Penman*, 75 F.3d 1311, 1325 (9th Cir.1996). Because plaintiff's constitutional assault claim is nothing more than a claim of excessive force in the course of an arrest, it is subsumed within his third cause of action and is hereby dismissed.

### V. *CONCLUSION*

After careful consideration of the objections and submissions of the parties, the relevant parts of the record, and the applicable law, it is hereby

ORDERED that

1. Defendants' motion for summary judgment is GRANTED; and

2. The complaint is DISMISSED.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.