■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WOODROW A. HALL, Appellant. [617 NYS2d 579] —Crew III, J. Appeal from a judgment of the County Court of Rensselaer County (Dwyer, Jr., J.), rendered January 15, 1992, upon a verdict convicting defendant of the crime of rape in the first degree.

During the early hours of May 19, 1990, the victim went to The Saloon, a bar in the City of Troy, Rensselaer County, where she met for the first time Kathy Bull, who introduced her to an individual referred to as "Cuz". When the victim observed both Bull and "Cuz" depart for Petar's, another bar, she followed along. All three left Petar's together and after Bull departed, "Cuz" pulled the victim into an alley where he raped her. The victim identified defendant as her assailant and, after a trial in which identification was the main contested issue, defendant was convicted of rape but acquitted of two associated sodomy counts.

Defendant was arrested when he emerged from a taxicab at

his home and was identified almost immediately thereafter by the victim. Contrary to defendant's argument, the police could rely upon specific information supplied in a radio bulletin by fellow police officers. County Court properly found that the underlying source of the broadcast information fully established probable cause for the arrest *(see, People v Dodt,* 61 NY2d 408, 416; *People v Crowley,* 156 AD2d 135, *lv denied* 75 NY2d 918). Similarly, the show-up identification of defendant while handcuffed in a police car, a practice not favored, was permissible in the interest of prompt identification considering the exigency of the circumstances, the proximity in time to the commission of the crime and the link establishing that defendant matched the description of the assailant who was seen entering the specifically identified taxicab in the immediate vicinity of the crime scene *(see, People v Teen,* 200 AD2d 785, *lv denied* 83 NY2d 859; *People v Jenkins,* 175 AD2d 648, *lv denied* 78 NY2d 859; *see also, People v Dodt, supra,* at 417). Moreover, while County Court failed to specifically conclude that the victim possessed an independent basis for an in-court identification, upon the record of the hearing, we are able to do so here *(see, People v Smith,* 179 AD2d 1022, *lv denied* 79 NY2d 1007). The victim sat at the same table with her assailant for 10 minutes, observed him on the dance floor, was in his presence on the 15-minute walk to Petar's bar, left Petar's with him and observed him during the attack and for a short period thereafter. These facts provide an ample basis for an in-court identification *(see, People v Ballott,* 20 NY2d 600, 606).

Defendant next challenges the propriety of certain statements made by the prosecutor. During summation, the prosecutor referred to defendant as a "wolf in sheeps clothing" and as being "out on the prowl", and suggested that defendant had a criminal propensity at the time of the attack based upon his visit to an "exotic" topless bar earlier that evening. While insufficient in themselves to warrant a reversal, such references are inappropriate and should be avoided *(see, People v Rivera,* 75 AD2d 544).

More serious was the prosecutor's improper use of a prior statement made by Bull, who was a reluctant witness subpoenaed by defendant. Bull testified that she did not know defendant, having met the victim and her assailant for the first time during the night in question, and could not identify defendant as the male who was with them, even though defendant had been pointed out to her sometime after the

attack. On cross-examination, the prosecutor questioned Bull's credibility using a prior statement given by her to the police.*

Defendant contends that the prosecutor improperly used Bull's statement during summation by stating that it was sworn, that defendant was contradicted by his own witness, and that the jury could believe defendant "or you can believe [the victim] and what Kathy Bull swore to Investigator Girard". Defendant failed to record an objection at that time. Later in the summation, defendant objected to the prosecutor's further reference to the statement, arguing that he was attempting to use it as substantive proof rather than solely on the issue of credibility. County Court acknowledged its understanding of the objection but permitted the summation to continue without any curative instructions to the jury. The prosecutor repeated the wording from the statement, adding defendant's last name, and followed this with the rhetorical question: "Did Kathy Bull tell you the truth when she said that she could not remember the defendant being in the bar? * * * or did she tell the investigagor *[sic]* * * * the truth when she gave a statement to him? You know the answer to that one, folks."

Prior inconsistent statements used for purposes of testimonial impeachment have no substantial or independent evidentiary value *(see, People v Freeman,* 9 NY2d 600, 605; *People v Blanchard,* 177 AD2d 854, 856, *lv denied* 79 NY2d 918), and it was error for the prosecutor to ask the jury to choose between Bull's out-of-court statement and her trial testimony. Furthermore, this is not a case where we can conclude that the error was harmless because of the overwhelming evidence of guilt *(see, People v Tinning,* 142 AD2d 402, 408, *lv denied* 73 NY2d 1022) or because prompt curative instructions dissipated any possible prejudice *(see, People v Wisniewski,* 133 AD2d 357, 358). Here, no curative instructions were given and the matter of guilt was based solely upon identification and attendant questions of credibility. Given the cumulative effect of the improper comments during summation and the importance of the credibility issues in this case, we conclude that there must be a new trial *(see, People v Williams,* 67 AD2d 613).

Cardona, P. J., Mikoll and Yesawich Jr., JJ., concur. Or-

---

* The statement, marked for identification, was not admitted into evidence. It was drafted by an investigator and signed by Bull, who testified that she had not read it. There is no indication in the record that it was a sworn statement. The statement, to the extent that it was read by the prosecutor, referred to the male that was with Bull and the victim at The Saloon and with whom they left as "Woody".

dered that the judgment is reversed, on the law, and matter remitted to the County Court of Rensselaer County for a new trial.

