◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MATTHEW SILBERZWEIG, Appellant. [871 NYS2d 690]—

Appeal by the defendant from a judgment of the Supreme Court, Richmond County (Rooney, J.), rendered January 19, 2007, convicting him of criminal possession of a forged instrument in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant was convicted of criminal possession of a forged instrument in the second degree based upon his presentation of an expired used car dealer's license, from which the expiration date had been removed, while attempting to purchase a vehicle at a used car auction without paying sales tax. Viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620 [1983]), we find that the evidence was legally sufficient to establish the defendant's guilt beyond a reasonable doubt (*see People v Johnson*, 65 NY2d 556 [1985]). Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15 [5]; *People v Danielson*, 9 NY3d 342 [2007]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo*, 2 NY3d 383, 410 [2004], *cert denied* 542 US 946 [2004]; *People v Bleakley*, 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]).

The defendant correctly observes that "[a]n essential element of the offense of criminal possession of a forged instrument is knowledge by the defendant that the instrument is forged" (*People v Johnson*, 65 NY2d 556, 560 [1985]; *see* Penal Law § 170.25). Moreover, while "[t]he mere negotiation or utterance of a forged instrument cannot, of itself, establish a presumption that [the] defendant had knowledge of the forged nature of the instrument" (*People v Johnson*, 65 NY2d at 561), the fact remains that "[g]uilty knowledge of forgery may be shown

circumstantially by conduct and events" (*People v Johnson,* 65 NY2d at 561). At the trial of this matter, the jury was presented with evidence that the defendant was the secretary of Halsey Transport Corp., a used car dealer, and that he was aware that in order to purchase used vehicles at auction without paying sales tax, he was required to present, inter alia, a valid used car dealer's license issued by the New York State Department of Motor Vehicles. There also was evidence that the defendant was an experienced purchaser at used car auctions, having participated with his father, the president of Halsey Transport Corp., in more than 100 such purchases, and having made such purchases on behalf of the corporation by himself on more than a dozen occasions. Furthermore, the defendant had worked for the corporation for some 10 to 12 years and was fully familiar with the auction process, with the paperwork which had to be presented during each purchase, and with the way a valid dealer's license should look. Finally, the proof demonstrated that on August 5, 2004 the defendant presented the license for Halsey Transport Corp. in connection with his attempt to purchase a used vehicle at auction without paying sales tax thereon, that said license had expired in January 2004, that the expiration date had been obliterated from the license which he presented, and that the defendant subsequently made telephone calls requesting the return of that document following its confiscation by the auction authorities.

The foregoing facts, which were established through credible and consistent testimony as well as documentary evidence, constituted persuasive circumstantial proof that the defendant knew the license had been altered at the time he presented it. Accordingly, we cannot say on this record that the verdict convicting him of criminal possession of a forged instrument in the second degree was against the weight of the evidence. While the defendant offered the testimony of his father which sought to minimize the defendant's knowledge of and involvement in the corporation's business, that testimony merely presented a credibility issue for determination by the jury, and we discern no basis to disturb the jury's resolution of that issue in favor of the prosecution. Mastro, J.P., Angiolillo, and Carni, JJ., concur.

Eng, J. (dissenting and voting to reverse the judgment, on the facts, to dismiss the indictment, and to remit the matter to the Supreme Court, Richmond County, for the purpose of entering an order in its discretion pursuant to CPL 160.50, with the following memorandum): I disagree with my colleagues' conclusion that the circumstantial evidence in this case was sufficiently persuasive to prove that the defendant knowingly

possessed a forged instrument, and believe that his conviction should be reversed upon the ground that it was against the weight of the evidence.

The evidence presented at trial demonstrated that the defendant is a New York City Sanitation Department employee who helps his father operate a used car business. Licensed used car dealers who possess valid business certificates issued by the New York State Department of Motor Vehicles (hereinafter the DMV) are permitted to purchase used cars at City of New York auctions without having to pay sales tax. The business certificate issued to Halsey Transport Corp. (hereinafter Halsey), the dealership operated by the defendant's father, expired in January 2004. However, approximately eight months later, the defendant attended a city auction and attempted to purchase a used car on Halsey's behalf without paying sales tax by presenting a business certificate which had been altered to remove its expiration date. For this act, the defendant was charged, inter alia, with criminal possession of a forged instrument in the second degree.

At trial the prosecution relied primarily upon the testimony of Lieutenant John Schwartz of the New York City Sheriff's Office, the officer responsible for conducting all city-wide auctions of vehicles seized for nonpayment of parking tickets. At the time of the defendant's arrest, Lieutenant Schwartz had been conducting such auctions for several years, and had known the defendant for "quite some time" because he came to "a lot" of auctions. The lieutenant also noted that the defendant attended the auctions sometimes by himself and sometimes accompanied by his father, and that he purchased cars "at a lot of the auctions." He estimated that he had "dealt" with the defendant at auctions more than a dozen times. Lieutenant Schwartz explained that auctions are open to licensed used car dealers and to members of the general public. Although members of the public who successfully bid on auctioned vehicles are required to pay sales tax, licensed used car dealers are permitted to purchase vehicles without having to pay sales tax because that tax will ultimately be paid by the consumer who purchases the car from the dealer.

On August 5, 2004 the defendant attended an auction in Staten Island and successfully bid on a 1999 Ford. When asked at trial whether he had any interaction with the defendant on August 5th, Lieutenant Schwartz replied that "at subsequent auctions I mentioned to [the defendant] that we're updating our paperwork as far as licensed used car dealers go," and requested that he bring in "updated information so that he could forego

the payment of sales tax." When the defendant presented his "paperwork" to the auction's cashier on August 5th to establish that he was purchasing the vehicle on behalf of his father's dealership, Halsey, the cashier called Lieutenant Schwartz over and asked him to take a look at the documents, which included a business certificate in Halsey's name. Since Lieutenant Schwartz "had some earlier knowledge" that Halsey was no longer in business, he contacted the DMV and asked an individual at the DMV to examine and verify the document for him. He explained that he asked the DMV for assistance because he was "not familiar with the document," and the specifics of what it should contain. Lieutenant Schwartz then sent a facsimile copy of the business certificate to the DMV. Upon receiving a reply from the DMV, the Lieutenant advised the defendant that based upon the information he had received, he could not allow him to purchase the vehicle without the payment of sales tax.

The People's only other witness, an investigator employed by the DMV, briefly testified that Lieutenant Schwartz contacted her on August 5, 2004 to verify the business certificate which the defendant had presented at the auction. She explained that the subject business certificate was not valid because it did not contain an expiration date, and that the business certificate issued to Halsey had actually expired in January 2004. The DMV investigator was not aware of whether anyone had ever notified Halsey that its business certificate had expired. At the close of the People's case, defense counsel moved to dismiss the indictment for failure to prove a prima facie case, arguing that the testimony of the two prosecution witnesses was insufficient to establish that the defendant had knowledge that the business certificate had been altered. However, the trial court reserved decision on the motion.

The defendant then called his father Michael Silberzweig to testify on his behalf. Silberzweig testified that he owned Halsey, and that he had continued to file quarterly sales tax returns on the corporation's behalf through August 31, 2004. Although he listed the defendant as Halsey's secretary when he incorporated the business, Silberzweig maintained that his son was secretary in name only, and that he did all the paperwork. Silberzwieg further testified that he was in possession of Halsey's business certificate prior to the August 5, 2004, auction, and that he handed the necessary paperwork to the defendant prior to the auction. When asked to estimate how many times his son had accompanied him to auctions, Silberzweig responded "[a] hundred times? I don't know." The defendant and his father attended auctions together over a 10- to 12-year period, and there

were also occasions when the defendant attended auctions alone because Silberzweig was unable to accompany him. According to Silberzweig, Halsey's business certificate had to be presented each time a vehicle was purchased at auction. He acknowledged that the defendant was able to view Halsey's business certificate when they purchased auctioned vehicles together, and when asked whether the defendant would be familiar with the way a valid certificate looked, Silberzweig replied, "[y]es, I guess he would."

After more than eight hours of deliberation, the jury indicated that it was deadlocked, and the court delivered an *Allen* charge (*see Allen v United States,* 164 US 492 [1896]). Following additional deliberation and readbacks of testimony, the jury reached its verdict convicting the defendant of criminal possession of a forged instrument in the second degree. The defendant renewed his motion for a trial order of dismissal, and the court indicated that it would treat his motion as one to set aside the verdict, and requested written submissions. The court subsequently denied the defendant's motion, imposed sentence, and this appeal ensued.

A person is guilty of criminal possession of a forged instrument in the second degree "when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he [or she] utters or possesses any forged instrument" (Penal Law § 170.25). As the majority recognizes, an essential element of this offense is knowledge by the defendant that the instrument is forged (*see People v Johnson,* 65 NY2d 556, 560 [1985]). While courts in other jurisdictions have held that the unexplained possession of a forged instrument is in itself a circumstance from which knowledge of its falsity may be inferred, the Court of Appeals rejected this approach in *People v Johnson* (65 NY2d at 560). In explaining that such an approach would be inconsistent with legislative intent, the *Johnson* court observed that "[h]ad the Legislature intended to presume knowledge of forgery upon a showing of mere possession of a forged instrument under Penal Law § 170.25, it would have so provided" (*id.* at 561). Thus, in New York "knowledge of the forged nature of the instrument will not be imputed to a person solely by reason of possession or presentation of said instrument" (*id.*). Subsequent to the Court of Appeals' decision in *Johnson,* the Legislature enacted Penal Law § 170.27 to expressly create a presumption that a person who possesses two or more forged credit or debit cards possesses those cards with knowledge that they are forged, and with intent to defraud, deceive, or injure another. The Legislature's decision to narrowly tailor the presumption to the

possession of multiple credit and debit cards reinforces the conclusion that knowledge of forgery may not be inferred from mere possession of other types of forged instruments, such as the business certificate at issue at bar.

On appeal the defendant contends that the prosecution failed to present legally sufficient evidence to establish that he was aware that the business certificate he presented at the August 5, 2004 auction had been altered to remove the expiration date. Since the court reserved decision on the motion for a trial order of dismissal which the defendant made at the close of the People's case, his legal sufficiency challenge must be evaluated as if his motion had been made at the close of evidence (*see People v Payne*, 3 NY3d 266, 273 [2004]). Thus, we must determine whether the totality of the evidence presented at trial, including the testimony of the defendant's father, was sufficient to establish that the defendant had knowledge of the altered nature of the business certificate he presented at the August 2004 auction. I concur with the majority's conclusion that the evidence, when viewed in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620 [1983]), was legally sufficient to allow the jury to have rationally inferred that the defendant knowingly possessed a forged instrument. Although the prosecution presented no direct evidence that the defendant was aware that the business certificate had been altered, and that he possessed it with intent to defraud or deceive, "[g]uilty knowledge of forgery may be shown circumstantially by conduct and events" (*People v Johnson*, 65 NY2d at 561). Affording the prosecution the benefit of every favorable inference that could be drawn from the evidence presented, it cannot be said that there is no valid line of reasoning which could lead a rational person to infer that the defendant knowingly possessed a forged instrument with intent to defraud or deceive.

However, the intermediate appellate courts of this State have been granted a unique factual review power (*see* CPL 470.15 [5]) and, thus, as the majority acknowledges, we have a responsibility to conduct an independent review of the weight of the evidence. In exercising our review power, we must first determine whether, based upon the credible evidence presented at trial, a different result would not be unreasonable (*see People v Romero*, 7 NY3d 633, 643 [2006]; *People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Zephyrin*, 52 AD3d 543 [2008]). If it would have been reasonable for the factfinder to have reached a different conclusion, "then the appellate court must, like the trier of fact below, 'weigh the relative probative force of conflict-

ing testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley,* 69 NY2d at 495, quoting *People ex rel. MacCracken v Miller,* 291 NY 55, 62 [1943]).

I believe that a review of the evidence presented at trial pursuant to this standard demonstrates that the verdict of guilt was against the weight of the evidence. The People argue that the defendant's guilty knowledge that the business certificate was altered can be circumstantially inferred from evidence that he was familiar with the appearance of such certificates because he regularly purchased vehicles at city auctions as a used car dealer, and had been asked "numerous times" to bring in updated paperwork prior to the August 5, 2004 auction. However, the inference that the defendant was fully familiar with the required content of a DMV business certificate is undermined by Lieutenant Schwartz's testimony that he himself was unsure of "the specifics" of what a business certificate should contain, despite the fact that he was the officer in charge of conducting used car auctions city-wide. Indeed, the lieutenant felt it necessary to request verification of the certificate's authenticity from the DMV before denying the defendant the right to purchase the vehicle without the payment of sales tax. Moreover, while the defendant's father testified that he guessed that the defendant would be familiar with the way that a business certificate looked because they were required to present the certificate when purchasing cars on behalf of Halsey, this assumption that the defendant was familiar with the usual appearance of the certificate is far from compelling proof that he was aware that a valid certificate was required to contain an expiration date. Furthermore, it is not at all clear from the lieutenant's testimony that the defendant had actually been asked to provide updated paperwork prior to the August 5th auction, or that any such request had been made "numerous times."

It is also significant to note that the record is entirely devoid of evidence that the defendant was aware that Halsey's business certificate had expired in January 2004. More importantly, no evidence was presented to establish who altered the certificate or when that alteration took place. Indeed, it is entirely possible that the alteration could have been made on the very day of the subject auction, shortly before the defendant was provided with the business certificate by his father. Moreover, as underscored by the lieutenant's testimony, the subject alteration, which appears to have consisted merely of obliterating the expiration date, was not of such a glaringly obvious

nature as to be readily apparent upon casual inspection. In addition, while the majority points out that the defendant requested return of the altered business certificate after the auction, I do not find this particularly persuasive proof of guilty knowledge. While an inference can be drawn that the defendant's request for return of the business certificate demonstrates consciousness of guilt, an equally strong inference can be drawn that he requested return of the document for use at future auctions because he was unaware that it was not genuine. In view of these deficiencies in the proof presented at trial, and the conflicting inferences which may be drawn from the evidence presented, I cannot agree that the circumstantial evidence presented was sufficiently compelling to prove the defendant's guilt beyond a reasonable doubt.