The People of the State of New York, Respondent, v Christopher Hughes, Appellant. [975 NYS2d 507]—

Spain, J. Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered August 22, 2012, upon a verdict convicting defendant of the crime of criminal possession of a forged instrument in the second degree.

Defendant, a police officer with the Town of Bethlehem Police Department (hereinafter BPD), was placed on disability leave in 2009. As a result, he turned in—as required—his police identification card, police badge and firearm. In September 2010, defendant contacted Galls, LLC, the company that produces badges for BPD, and submitted an online order for a BPD badge indicating his status as a retired patrol officer. A Galls representative contacted defendant, obtained payment information and advised him that a police identification card was

---

required to process his badge order. Thereafter, on October 7, 2010, defendant took a CD containing an image of a police photo identification card (hereinafter the police ID card) to a Staples store and asked a clerk to send an email to Galls on his behalf containing the image of the police ID card; the image sent to Galls consisted of a BPD police ID card in defendant's name containing his picture, on what appears to be official BPD letterhead. A Galls representative contacted BPD Deputy Chief Timothy Beebe, who is responsible for the issuance of BPD police ID cards, and Beebe refused to authorize a retirement badge for defendant because he was not retired but, rather, still employed while on disability leave. Following an investigation by the State Police, it was determined that the police ID card that defendant sent to Galls was fraudulent as it had not been created by Linstar, the vendor that exclusively produces BPD police ID cards, nor had it been authorized by BPD and it did not contain the official authorized signature of the Chief of Police, Louis Corsi, that was on file with Linstar. Defendant was charged with—and convicted after a jury trial of—criminal possession of a forged instrument in the second degree. Sentenced to five years of probation, defendant appeals.

Initially, having made only a general motion for dismissal at trial, defendant failed to preserve the legal sufficiency challenge he now raises on appeal (*see People v Alnutt*, 107 AD3d 1139, 1142 [2013]; *People v Morrison*, 71 AD3d 1228, 1229 [2010], *lv denied* 15 NY3d 754 [2010]). However, defendant argues that the verdict is against the weight of the evidence and "our weight of the evidence review necessarily involves an evaluation of whether all elements of the charged crime were proven beyond a reasonable doubt at trial" (*People v Thompson*, 92 AD3d 1139, 1140 n 2 [2012] [internal quotation marks and citation omitted], *lv denied* 21 NY3d 555 [2013]; *see People v Danielson*, 9 NY3d 342, 349 [2007]).

Indeed, the verdict was not against the weight of the credible evidence. To sustain the charge, the People were required to prove that defendant knowingly possessed a forged instrument "with intent to defraud, deceive or injure another" (Penal Law § 170.25). The testimony of the Staples clerk established that defendant possessed the CD that contained the image of the fraudulent police ID card. Defendant's knowledge that it was forged was demonstrated by proof that he had previously possessed and turned in his official police ID card the prior year, and that BPD had not authorized the police ID card contained on the CD; further, the police ID card did not contain the official signature of the Chief of Police used for police ID cards,

and the exclusive vendor who made BPD police ID cards (Linstar) did not create the card pictured on the CD. Linstar's representative pointed out numerous attributes that were noticeably different between defendant's official police ID card (which defendant had turned into BPD) and the copy of the forged card he had emailed to Galls. Given that "[g]uilty knowledge of forgery may be shown circumstantially," we find the evidence adduced at trial to be highly persuasive that defendant knew the police ID card he submitted to Galls was forged (*People v Rebollo*, 107 AD3d 1059, 1060 [2013]; *see People v Silberzweig*, 58 AD3d 762, 762-763 [2009], *lv denied* 12 NY3d 920 [2009]).

The fact that the forged police ID card bore a close resemblance to an authentic one did not, on these facts, undermine the conclusion that defendant was aware it was a forgery. Moreover, the People were not required to prove where the police ID card came from or who created it, which are not elements of this crime (*see* Penal Law § 170.25). Likewise, "evidence of an intent to defraud or deceive may be inferred from a defendant's actions and surrounding circumstances" (*People v Rebollo*, 107 AD3d at 1061). Here, the jury rationally concluded that defendant submitted the forged police ID card to Galls, intending to deceive its representatives into creating a retired police officer badge for him, to which he had no entitlement and for which he did not qualify. Moreover, defendant also used a copy of BPD letterhead to submit the image of the forged police ID card, letterhead which only the Chief of Police was authorized to use and who had not approved its use here, further supporting defendant's intent to deceive. That defendant did not attempt to conceal his true identity in this deceptive scheme is likely attributable to his desire to have the police badge in his correct name for use in the community where he was known, as well as his ignorance that Galls would contact BPD officials to confirm his status and entitlement to the sought-after badge; it did not suggest that defendant lacked the intent to deceive.

The jury also reasonably rejected defendant's claim that he believed he was retired from BPD and, thus, entitled to a retirement badge; the evidence established, to the contrary, that defendant remained on the BPD payroll and on disability leave. There was no evidence to support a reasonable belief by defendant that he was retired from BPD, and his intent to deceive was readily inferable from his use of a forged police ID card. Even if an acquittal would not have been unreasonable, upon deferring to the jury's credibility determinations and weighing the conflicting testimony in a neutral light, and examining the "rational inferences that may be drawn from the evidence, and

evaluat[ing] the strength of such conclusions" (*People v Danielson*, 9 NY3d at 348; *People v Bleakley*, 69 NY2d 490, 495 [1987]), we find that the verdict was supported by the weight of the credible evidence.

Defendant's claims of prosecutorial misconduct are largely unpreserved and, in any event, the complained of prosecutorial summation remarks did not deprive defendant of a fair trial or due process (*see People v Houck*, 101 AD3d 1239, 1240 [2012]; *People v Weber*, 40 AD3d 1267, 1268 [2007], *lv denied* 9 NY3d 927 [2007]). While the prosecutor made one improper remark vouching for the credibility of the Linstar representative (*see People v Russell*, 307 AD2d 385, 386 [2003]), her remarks and stylistic use of personal pronouns such as "we" were otherwise fair comment on the evidence and were reasonable responses to the defense summation (*see People v Williamson*, 77 AD3d 1183, 1185 [2010]; *People v Grajales*, 294 AD2d 657, 658 [2002], *lv denied* 98 NY2d 697 [2002]).

Further, the People did not improperly shift the burden of proof to defendant (*see People v Anderson*, 89 AD3d 1161, 1162 [2011]; *cf. People v Allen*, 13 AD3d 892, 897-898 [2004], *lv denied* 4 NY3d 883 [2005]). When the prosecutor rhetorically asked jurors if there was any evidence that defendant had inquired into the authenticity of the image of the police ID card he submitted to Galls, County Court sua sponte advised the jury that the People bore the burden of proof and "[t]he defendant has no burden." This principle was also reiterated in the court's final charge. When the prosecutor pointed out in summation that defendant "never tried to go through his chain of command" to get a retirement badge, defendant's objection was overruled; the prosecutor then clarified that there was "no evidence" of that, all fair comment on the testimony elicited from the *People's* witnesses. This remark did not suggest that defendant had any burden of proof.

Defendant received meaningful representation, as counsel made appropriate pretrial motions and objections at trial, pursued a cogent defense strategy throughout and effectively cross-examined the People's witnesses (*see People v Henry*, 95 NY2d 563, 565 [2000]). Counsel's decision not to elicit that State Police found no incriminating evidence on defendant's seized home computer* may have been a strategic effort to avoid juror speculation that defendant created the forged police ID card on his own computer and went to Staples to send Galls an email to avoid leaving a trial on his own computer (*see People v*

---

* Notably, defendant's computer was not seized until months later.

*Caban*, 5 NY3d 143, 152 [2005]). Defense counsel's misstatement about reasonable doubt was clarified by the court's subsequent correct and clear charge, that the People were required to prove each element beyond a reasonable doubt and, if the People failed to so prove any element, the jury must find defendant not guilty. None of defendant's remaining points supports a finding that counsel ineffectively represented him at trial.

Finally, we agree, in part, with defendant's contention that County Court improperly denied his motion requesting permission to question Corsi and Beebe about prior notices of discipline, grievances filed by defendant and defendant's pending federal lawsuit against BPD and Corsi. The court concluded that the issues were collateral and would be precluded unless the door were opened by a witness's testimony reflecting bias or hostility toward defendant. While "trial courts have broad discretion to keep the proceedings within manageable limits and to curtail exploration of collateral matters," "extrinsic proof tending to establish a reason to fabricate is never collateral and may not be excluded on that ground" (*People v Hudy*, 73 NY2d 40, 56 [1988]; *see People v Spencer*, 20 NY3d 954, 956 [2012]; *People v Alnutt*, 101 AD3d 1461, 1465 [2012], *lv denied* 21 NY3d 941 [2013]; *cf. People v Hines*, 102 AD3d 889, 889 [2013], *lv denied* 21 NY3d 1042 [2013]). Evidence of Beebe's reason to fabricate was largely speculative, although not as to Corsi. Nonetheless, given the overwhelming independent proof of defendant's guilt, including the testimony of the Linstar and Galls' representatives, the Staples employee and a State Police investigator, we find that this error was harmless beyond a reasonable doubt (*see People v Spencer*, 20 NY3d at 956-957; *People v Crimmins*, 36 NY2d 230, 240-241 [1975]).

Lahtinen, J.P., Stein and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.