■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TERRY MARTIN, Appellant. [983 NYS2d 360]—

McCarthy, J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered November 13, 2007, upon a verdict convicting defendant of the crime of forgery in the second degree (two counts).

In October 2006, defendant twice used a credit card in the name of Arthur Wolfe, who was—until his death in 2003—the domestic partner of defendant's fiancee.* Based on these actions, a jury found defendant guilty of two counts of forgery in the second degree. County Court sentenced him, as a second felony offender, to two terms of 3 to 6 years in prison, to be served concurrently to each other but consecutively to a separate four-year sentence on a recent driving while intoxicated conviction. Defendant appeals.

The evidence was legally sufficient and the verdict was not against the weight of the evidence. "A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he [or she] falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or to represent if completed . . . [a] credit card . . . or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status" (Penal Law § 170.10 [1]; see People v Le Grand, 81 AD2d 945, 946 [1981], lv denied 54 NY2d 757 [1981]). Employees of the establishment where the credit card was used, as well as a video from the night in question, identified defendant as the person who twice tendered the card and signed the two receipts. The only real element at issue was whether defendant signed the credit card receipts with "intent to defraud, deceive or injure" the bank that issued the credit card. Intent to defraud or deceive may be shown circumstantially and "may be inferred from a defendant's actions and surrounding circumstances" (People v Rebollo, 107 AD3d 1059, 1060-1061 [2013]; see People v Hughes, 111 AD3d 1170, 1172 [2013]). One employee testified that defendant introduced himself as Artie Wolfe, and defendant signed the name Arthur Wolfe on the receipts, rather than using his own name. Viewing the evidence in the light most favorable to the People, and giving them

* Because defendant had married his fiancee by the time of his trial in 2007, we will hereafter refer to her as his wife.

the benefit of all permissible inferences, this evidence was legally sufficient to support the convictions (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Rebollo*, 107 AD3d at 1061).

A bank employee testified that defendant's wife was listed by Wolfe as an authorized user of the credit card, and the bill was always paid, but the bank should have been notified when Wolfe died and the account would have been closed. Defendant's wife testified that she was an authorized user, she gave defendant permission to use the card, they always paid the bill, the bank got interest when they did not pay in full, and she thought that she could continue to use the credit card until Wolfe's estate was closed, which had not yet occurred. She also testified that she did not tell defendant what name to sign, she did not get a credit card in her own name because her credit was not "the world's greatest," she received the benefit of Wolfe's credit, she and defendant were attempting to start their own construction business, and defendant did not have a bank account or a credit card in his own name. Although it would not have been unreasonable for the jury to find that defendant thought he was allowed to use the credit card as long as he paid the bill, we cannot say that the verdict was against the weight of the evidence, as it was reasonable for the jury to conclude that defendant intended to deceive the bank into continuing to offer credit to a dead man, which defendant would then use, when defendant and his wife were not credit worthy and were possibly unable to obtain their own line of credit (*compare People v Lydon*, 33 AD3d 335, 336 [2006], *lv denied* 7 NY3d 926 [2006]).

Defendant has not established that he was deprived of the effective assistance of counsel. Although the failure to make a speedy trial motion may be sufficiently egregious to deprive a defendant of meaningful representation, there must be proof that the motion would have been successful (*see People v Devino*, 110 AD3d 1146, 1147-1148 [2013]). Based on the record, it does not appear that defendant could have met his burden of establishing sufficient postreadiness delays that were attributable to the People (*see People v Sydlar*, 106 AD3d 1368, 1369 [2013], *lv dismissed* 21 NY3d 1046 [2013]; *People v Pope*, 96 AD3d 1231, 1233 [2012], *lv denied* 20 NY3d 1064 [2013]). Defendant also contends that counsel should have requested a mistake-of-fact jury charge, but the charges concerning intent and the People's burden to prove the elements beyond a reasonable doubt adequately conveyed the law and the appropriate burdens so as to cover the defense theory regarding defendant's lack of intent (*see People v Williams*, 81 NY2d 303, 317 [1993];

*People v Salamone*, 89 AD3d 961, 962 [2011], *lv denied* 18 NY3d 928 [2012]). Thus, counsel was not ineffective for failing to make a speedy trial motion that would not have been successful or for failing to request a mistake-of-fact charge.

Considering defendant's escalating criminal history and refusal to acknowledge any wrongdoing, the sentence was not harsh or excessive (*see People v Rebollo*, 107 AD3d at 1062).

Lahtinen, J.P., Garry and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.