Egan Jr., J.
Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered April 11, 2014, upon a verdict convicting defendant of the crimes of robbery in the third degree, criminal possession of stolen property in the fourth degree (two counts) and forgery in the second degree.
During the early morning hours of March 24, 2013, the victim had her purse stolen by a male assailant as she was walking in the vicinity of Madison Avenue and Partridge Street in the City of Albany. Later that morning, an individual— subsequently identified as defendant — used the victim’s credit card to make purchases at a nearby Price Chopper supermarket and at a Mobil Xtramart convenience store located on New Scotland Avenue. The purchase at the supermarket did not require a signature, but the purchase at the convenience store did. In connection with the latter transaction, the cashier at the convenience store asked defendant to produce identification; defendant provided a non-photo temporary driver’s license, and the cashier wrote defendant’s driver’s license number on the store’s copy of the receipt.
A short time later, members of the Albany Police Department interviewed the victim, reviewed video surveillance footage at the stores and ran the driver’s license number appearing on *1314 the credit card receipt.[1] After a certain, detective, who was familiar with defendant, identified defendant from one of the surveillance videos as the person involved in the transactions at the supermarket and the convenience store, a police bulletin was issued indicating that officers should be on the lookout for defendant. The bulletin, which provided a physical description of defendant and his vehicle and recited defendant’s criminal history, indicated that defendant, who was on probation, was wanted both in connection with the underlying robbery and on an outstanding bench warrant issued by Albany City Court. In response to this bulletin, a uniformed patrol officer encountered defendant and brought him to the station for questioning, at which time defendant made certain incriminating statements.
After testifying before the grand jury, defendant was indicted and charged with robbery in the third degree, criminal possession of stolen property in the fourth degree (two counts) and forgery in the second degree. Following the denial of his suppression motion, the trial proceeded in defendant’s absence and defendant was convicted as charged. County Court thereafter sentenced defendant to concurrent prison terms of 2V3 to 7 years for the robbery conviction and 1 to 3 years for each conviction of criminal possession of stolen property, in addition to a term of 2 to 6 years for the forgery conviction — said term to run consecutively to the other sentences imposed. This appeal by defendant ensued.
Preliminarily, we reject defendant’s assertion that the police lacked probable cause for his arrest. “A police officer is entitled to act on the strength of a radio bulletin or a telephone or teletype alert from a fellow officer or department and to assume its reliability” (People v Lypka, 36 NY2d 210, 213 [1975] [citations omitted]; accord People v Rosario, 78 NY2d 583, 588 [1991], cert denied 502 US 1109 [1992]; People v Hummer, 228 AD2d 783, 785 [1996], lv denied 88 NY2d 1021 [1996]). This rule “applie[s] whether the communication was between superior or fellow officers within the same department, different agencies or agencies at different levels within a [s]tate and between officials in different [s]tates as well as between [federal and [s]tate or local authorities” (People v Rosario, 78 NY2d at 588). An officer acting upon “transmitted information [is] justified in doing so because the officer or department furnishing that information presumptively possesses the *1315 requisite probable cause which, justifies the warrantless arrest” (id.] see People v Hummer, 228 AD2d at 785; People v Pegram, 203 AD2d 391, 391 [1994]). Hence, the officer in receipt of the transmitted information need not possess “personal knowledge sufficient to establish probable cause” (People v Ramirez-Portoreal, 88 NY2d 99, 113 [1996]). Where, as here, a challenge is made to the warrantless action, “the presumption of probable cause disappears and it becomes incumbent upon the People to establish that the officer or agency imparting the information ... in fact possessed the probable cause to act” (People v Rosario, 78 NY2d at 588; see People v Hummer, 228 AD2d at 785; People v Ramsey, 140 AD2d 638, 638 [1988], lv denied 72 NY2d 923 [1988]).
Based upon our review of the testimony offered at the suppression hearing, which detailed the investigative efforts undertaken to identify defendant as the perpetrator, we are satisfied that there was probable cause to issue the subject bulletin, thereby justifying the uniformed officer’s reliance upon such information in apprehending defendant (see People v Hall, 208 AD2d 1044, 1045 [1994]). To the extent that there is some dispute as to whether defendant was picked up on the outstanding bench warrant and thereafter questioned regarding the subject robbery (see generally People v Clarke, 5 AD3d 807, 810 [2004], lv denied 2 NY3d 797 [2004]; People v Cypriano, 73 AD2d 902, 903 [1980]) or was apprehended based upon the information contained in the bulletin relative to the robbery itself, this issue need not detain us as the record as a whole demonstrates that there was probable cause to apprehend and arrest defendant.
Defendant, as so limited by his brief, next contends that the verdict convicting him of forgery in the second degree is against the weight of the evidence. Again, we disagree. Insofar as is relevant here, “[a] person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he [or she] falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or to represent if completed . . . [a] . . . credit card ... or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status” (Penal Law § 170.10 [1]; see People v Martin, 116 AD3d 1166, 1166 [2014], lv denied 23 NY3d 1039 [2014]). “[A] necessary element of the crime of forgery is proof that the defendant signed another’s name without that person’s authorization” (People v Friedman, 14 AD3d 713, 713 [2005], lv denied 5 NY3d 788 [2005]; see People v Levitan, 49 NY2d 87, *1316 90-91 [1980]; People v Maldonado, 119 AD3d 610, 611 [2014], lv granted 25 NY3d 1167 [2015]; People v Asai, 66 AD3d 1138, 1139-1140 [2009]). As to the issue of intent, it is well settled that “[i]ntent to defraud or deceive may be shown circumstantially and may be inferred from a defendant’s actions and surrounding circumstances” (People v Martin, 116 AD3d at 1166 [internal quotation marks and citation omitted]; see People v Kocsis, 137 AD3d 1476, 1478-1479 [2016]; People v Bickley, 99 AD3d 1113, 1113-1114 [2012], lv denied 20 NY3d 1009 [2013]).
Here, the count charging defendant with forgery in the second degree pertained to the credit card transaction at the Mobil Xtramart convenience store. In this regard, there is no dispute that defendant made this particular purchase. Indeed, defendant admitted — during the course of his grand jury testimony (read into the trial record by the People) — to using the credit card at issue, which he knew was not his, to buy a carton of cigarettes at the convenience store. There also is no question that the victim did not give defendant — or anyone else, for that matter — permission to use her stolen credit card to make this purchase. Hence, the issues distill to whether, by signing for this credit card transaction, defendant acted with the requisite intent and falsely “mad[e], complete [d] or alter [ed] a written instrument” (Penal Law § 170.10 [1]) as those terms are defined by Penal Law § 170.00.
According to defendant, he was given what proved to be the victim’s credit card by a friend; this friend, in turn, purportedly gave him permission to use the credit card to buy cigarettes at the convenience store. Defendant claimed that he did not look at the name printed on the card, nor was he aware that the card, which defendant believed belonged to either his friend or his friend’s girlfriend, was stolen. When asked for identification in connection with this transaction, defendant provided only a non-photo temporary driver’s license; when the cashier requested an alternate form of identification, defendant claimed that he did not have any, but promised the cashier that he would return later with his photo identification. The clerk testified that defendant did not return as promised, and the credit card receipt in the record contains an illegible signature — a signature that bears no resemblance to defendant’s signature as it appears on the waiver of immunity that he signed prior to testifying before the grand jury.
In addition to the foregoing, the jury also heard from Jeffrey Butler, who testified that he encountered defendant at approximately 7:00 a.m. on the morning of March 24, 2013 at the intersection of First Street and Henry Johnson Boulevard in *1317 the City of Albany. According to Butler, who had prior dealings with defendant, defendant approached him and offered him the use of what defendant described as his girlfriend’s credit card in exchange for a quantity of crack cocaine. Specifically, Butler testified that defendant said, 'Yo, I got a credit card, I take you to Walmart, get you a couple cartons of Newports and we’ll work out a deal.” Butler agreed but, when the pair arrived at the local Walmart, defendant “started fidgeting real bad,” prompting Butler to advise defendant, “Yo, you don’t need to go into Walmart looking like that. It’s too early in the morning. Give me the card. I’ll go in there.” When Butler attempted to make the agreed-upon purchase, the credit card was declined and, when Butler emerged from the store, defendant, who had remained outside in his vehicle, was gone.
Defendant argues that the proof adduced at trial implies that he completed the relevant credit card transaction in his own name and, hence, no forgery occurred (see People v Zeller, 122 AD3d 1081, 1082-1083 [2014]; People v Morehouse, 109 AD3d 1022, 1023 [2013]; People v Asai, 66 AD3d at 1139-1140). However, the jury reasonably could conclude — based upon, among other things, defendant’s evolving story as to the true owner of the credit card, the non-photo identification that defendant tendered in connection with the subject transaction, the illegible signature that defendant scrawled on the resulting receipt generated in connection therewith and his subsequent attempt to trade the use of the credit card for drugs — that defendant acted with the requisite intent and, further, falsely executed the credit card transaction in a manner designed to deceive the cashier into believing that he was the authorized purchaser. Thus, “while a different verdict would not have been unreasonable, viewing the evidence in a neutral light and giving due deference to the jury’s credibility determinations, we cannot say that the jury failed to accord the evidence the weight that it deserved” (People v Hawkins, 130 AD3d 1298, 1303 [2015] [internal quotation marks, brackets and citation omitted], lv denied 26 NY3d 968 [2015]).
We do, however, agree that County Court should have granted defendant’s challenge for cause with respect to prospective juror No. 15. Pursuant to CPL 270.20 (1) (b), a party may challenge a prospective juror for cause if such juror “has a state of mind that is likely to preclude him [or her] from rendering an impartial verdict based upon the evidence adduced at the trial.” In this regard, the Court of Appeals has made clear that “a prospective juror whose statements raise a serious doubt regarding the ability to be impartial must be excused *1318 unless the juror states unequivocally on the record that he or she can be fair and impartial” (People v Harris, 19 NY3d 679, 685 [2012] [internal quotation marks and citation omitted]; see People v Briskin, 125 AD3d 1113, 1117 [2015], lv denied 25 NY3d 1069 [2015]). Accordingly, “[w]hen a prospective juror’s impartiality is in doubt, it is the court’s obligation to make further inquiries and to excuse the juror if the doubt is not fully dispelled. Notably, if there is any doubt about a prospective juror’s impartiality, the trial court should err on the side of excusing the juror, since at worst the court will have replaced one impartial juror with another” (People v Briskin, 125 AD3d at 1117 [internal quotation marks, brackets and citations omitted]; see People v Izzo, 104 AD3d 964, 965-966 [2013], lv denied 21 NY3d 1005 [2013]).
During the course of jury selection, prospective juror No. 15 expressed concern regarding a potential witness’s prior criminal “track record.” After initially indicating that he might be influenced “greatly” by a witness’s criminal record, County Court explained to prospective juror No. 15 — and the rest of the panel — that the jury could take into consideration a witness’s prior criminal conviction in assessing whether the jury believed the testimony offered by that witness. When asked by County Court whether he could follow the court’s instruction on that point, prospective juror No. 15 replied, “Oh, yes, yes.” Upon further inquiry by defense counsel, however, prospective juror No. 15 explained that if he were to learn that defendant previously had engaged in the same or similar offenses as those charged in the indictment, he “might be swayed” by what he would view “as a continuous track record.” When asked how such knowledge would affect his thinking, prospective juror No. 15 replied, “Negatively.” Defense counsel then inquired, “Negatively towards?,” in response to which prospective juror No. 15 stated, “Guilty.” When defense counsel asked, “Just by virtue of a [prior] record?,” the prospective juror replied, ‘Yes, of a continuous criminal record, yes.” Other than County Court’s general inquiry as to the panel’s ability to follow the law as charged by the court, no further questioning of this juror occurred and no unequivocal assurances of impartiality were elicited. Absent such assurances, County Court erred in denying defendant’s challenge for cause as to this prospective juror. Inasmuch as defendant was forced to use a peremptory challenge to strike prospective juror No. 15 and thereafter exhausted his peremptory challenges prior to *1319 the completion of jury selection,[2] this error warrants reversal of the judgment of conviction and remittal for a new trial (see CPL 270.20 [2]; People v Greenfield, 112 AD3d 1226, 1230 [2013], lv denied 23 NY3d 1037 [2014]).[3] Defendant’s remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
McCarthy, J.P., Garry, Devine and Aarons, JJ., concur.
Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Albany County for a new trial.

. Although the convenience store clerk omitted the last digit of the nine-digit driver’s license number, when law enforcement officials began adding a number between zero and nine to the eight digits written on the receipt, defendant’s name “popfped] up.”

. The People and defendant each were allotted 10 peremptory challenges for the 12 sworn jurors who were to be selected. During the first round of jury selection, defendant exercised seven of his peremptory challenges, and 10 sworn jurors were seated. During the second round, defendant exercised his three remaining peremptory challenges, and County Court thereafter seated the two remaining sworn jurors. Hence, contrary to the People’s assertion, defendant did not have any remaining peremptory challenges at the point in time that the final two jurors were seated.

. In light of this conclusion, we need not consider whether County Court’s denial of defendant’s challenge for cause as to prospective juror No. 2 also was erroneous.